The opinion of the Court was delivered by
Kennedy, J.
The plaintiffs claim to recover the property in question of the defendants, upon the principle of election. The doctrine of equitable election is founded on the intention of the author of the instrument, which must, as I apprehend, be collected from the face of the instrument itself. When the intention necessary to raise the question of election, is clearly expressed or necessarily implied, the party to whom a benefit is given by the instrument, but claiming a right adverse thereto, may either be compelléd to make his election, or otherwise to make compensation out of what is thereby given to him. But unless the intention be so expressed or implied, he cannot be put to his election, nor palled on to make compensation. Accordingly, in Blake v. Bunbury, (1 Ves. Jr. 524,) Lord Commissioner Eyre says, “ it ought to appear by declaration, a plain or necessary conclusion from the circumstances; and no man ought under pretence of this rule, to be spelt or conjectured out of his property.” And again' in Crosbey v. Murray, (Id. 557,) he repeats, “ there never can be a case of election, but upon a presumed intention of the testator.” See also Finch v. Finch, (Id. 541.) So Lord Eldon, in Dashwood v. Peyton, (18 Ves. 41,) declares, “ that an effectual' gift may be made by raising a case of election ; but for that purpose a clear intention to give that, which is not his property, is always required.” And it would seem as if the heirs at law of the testator Will not be put to make their election, when the will is susceptible of a construction that does not require it; for Sir Thomas Plumer, Master of the Rolls, in Back v. Kett, (1 Jacob, 534,) held, in case of a will giving certain benefits to the heir at law of the testator, and directing his executors to sell whatever real estate he should die possessed 'of; that the heir was not bound to elect between the benefits given by the will, and lands purchased by the testator after the making thereof, which descended to the heir by law, but held that he was entitled to both, alleging. “ that the direction to the executors to sell all the real estates that he should die possessed of, might mean all which the will could operate upon, that is, all which he then had, and which he should continue to have at his death.” Likewise in Johnson v. Telford, (1 Russell & Mylne, 244; S. C. 4 Cond. Eng. Ch. Rep. 409,) the testator by a codicil, reciting *503 that he had purchased certain freeholds since the date of his will, devised them to trustees upon the trusts therein expressed, and directed that if any hereditaments purchased by him at any time or times should happen to be conveyed after the date and publishing thereof, his heir at law or other real representative, and every other person in whom the same should be vested, should forthwith, upon his decease, convey and assume the same to his trustees upon the trusts of his will. He purchased other real estates afterwards, which were duly conveyed to him; and Sir John Leach, Master of the Rolls, held that the language used in the codicil did not refer to estates purchased after the codicil, but to estates which should happen to be conveyed thereafter; and therefore as to the estates purchased subsequently, a case of election was not raised.against the heir taking benefits given' to him by the will.
Now, as regards the casé under consideration, a majority of the court are of opinion that the testator must be presumed to know how the law stood at the time of making his will and the codicils thereto; and that according to it he could not then devise after-acquired real estate; that whatever he should acquire thereafter, if he wished it to pass by his will, he must in order to effect this, either make a new will, republish that he had made, or add a codicil to it, with that view. With this knowledge on his part, it is fair to conclude that by the language used in the codicils to his will, he' only meant to declare that as often as he should thereafter acquire any additional reál estate, his intention then was to dispose of it under his will, either by a republication thereof, or adding to it a codicil. But not having republished his will or made a codicil thereto, subsequently to the purchase of the lands in question, it is reasonable to infer, that ho changed his mind in regard to disposing of them by will, and resolved to let them pass upon his death to his heirs at law. As'to myself however, although I think differently, and incline to entertain the opinion, judging from the language of the codicils alone, that the testator thought he could dispose of his after-acquired real estate by his will, as well as that which he then owned, by declaring his intention to that effect, and that after making the codicils he believed he had done so; yet standing alone in ,this opinion, and not being supported in it by the concurrence of my brethren, I feel that it would be unbecoming in me to pronounce that the testator had manifested an intention free from all reasonable doubt, and such as clearly required an election on the part of the heirs. In this I consider myself sustained by the example of Lord Camper in Lawrence v. Lawrence, (1 Bro. P. C. 591, first ed.) which is one of the early cases, that we have a report of in a Court of Equity on the subject of election. In it, after a recovery of dower at law by Dulcibella Lawrence, and the receipt by her of certain benefits under the will of her late husband,, which Lord Somers conceived were given to her in lieu of dower, he decreed a perpetual injunction against *504 her; but Lord Keeper Wright, thinking that the benefits taken under the will were not intended by the testator to be in lieu of dower, reversed the decree of Lord Somers; after which Lord Cowper, upon a bill by a subsequent remainder-man, refused to disturb the decree of reversal, considering the intention of the testator to be dubious, merely from the conflicting opinions previously expressed by Lord Somers and Lord Wright in respect to it.
Thecourt then-in this case, being of opinion that the testator did not intend to pass the property in controversy, by his will and the codicils thereto, it follows clearly that the plaintiffs’ have no ground of pretence whatever upon which to found their claim to a recovexy. But even supposing that he had, and that he had declared his intention to that effect, in terms as clear as the light at noonday, still a majority, if not the whole of the court, are fully convinced that the plaintiffs could not recover.
Anterior to the case of Thellusson v. Woodford, (13 Ves. 209,) which was decided by Lord Erskine in 1806, there is no case to be found, in which it appears to have been suggested or thought that an heir at law, who was a legatee under the will of the testator, and upon whom lands acquired by.the latter, after making his will, had descended, could be compelled to make his election merely because the testator had undertaken by his will to dispose of all the lands which he should thereafter acquire. It is not credible that the case of the heirs at law, taking at the same time a benefit under such will and after-acquired land by descent, never occurred until the case of Thellusson v. Woodford. On the contrary it is more than probable that it often happened without its having ever entered into the mind of any one to make this objection to it. This is strongly persuasive, if not irresistible evidence, to induce a belief, that the doctrine of election was never thought to have embraced - such a case before. This inference seems to receive support from Lord Eldon in Broome v. Monk, (10 Ves. 609,) decided by him in the year preceding that of Thellusson and Woodford by Lord Erskine, when he says, “ election is where the testator gives what does not belong to him, but does belong to some other person ; and gives that person some of his own: by virtue of which gift a condition is implied, either that he will part with his own estate, or shall not take the bounty.” This doubtless, was thought by Lord Eldon to be a faithful and accurate abstract of all the cases decided up to that time, in which it had been held that a party taking a benefit under a will was bound to elect. It certainly embraces vex-y fully and distinctly the cases of Noys v. Mordaunt, (2 Vern. 531.) Streatfield v. Streatfield, (Co. Temp. Talb. 176, and substantially also, as I conceive, the Anonymous case in Gilb. Eq. Rep. 15, which are the leading cases on this subject, with the exception of White v. White and Others, (2 Dick. 522,) to be noticed more particularly hereafter; all decided before our revolution, and therefore to be considered as having a claim to *505 some binding authority with us. Lord Eldon certainly did not think that such a case as Thellusson v. Woodford, would have been sufficient to put the heir at law to his election, under the view that Lord Erskine took of it. The contrary however is plainly inferrible from what he says; for after stating as above what appeared to him to be the true test by which to determine a case of election, he in order to show that the case then under his consideration did not come within it, proceeds by saying, that the question there was not whether the testator had taken away from the defendants what belonged to them, but whether he had taken away from them part of his own personal estate. His words are “ but here the question is not that, but whether he” (meaning the testator,) “ has taken away from these defendants, part of that personal estate which was .the testators, and was given to be laid out in the purchase of lands.” Now the form here given by Lord Eldon, to the question actually presented by the case of Broome v. Monk, is substantially the same with that given by Lord Erskine in Thellusson v. Woodford, as also with the one presented by the case before us, if it be admitted that the testator intended to pass the land in dispute by his will; for it certainly cannot be said that the question either in Thellusson v. Woodford, or here is, whether the testator has given that which belonged to the defendants at the time of making the will or codicils, or at any subsequent period of the testator’s life, which Lord Eldon seems to have considered necessary, in order to make a case of election. It is perfectly clear that the question here is, as Lord Eldon conceived it to be in Broome v. Monk, to wit: whether the testator has devised what was beyond all question his own at the time of his death as well as some time before, and which he could have given to the plaintiffs for some time before, as well as at his death in despite of all the world, if he had pleased. This question, however, we all know was answered and settled in the negative by the decision of this court, in Girard and others v. Mayor Aldermen and citizens of Philadelphia, (4 Rawle, 325.) Seeing then that the present case does not come within Lord Eldon’s description of a case of election, nor yet, as it appears to me, within the outlines of any of the cases decided on this subject in England anterior to our revolution, it may be proper to examine, and see whether the same reason exists in it for making it a case of election. The only question raised in them was, whether a legatee could recover a legacy, and at the same time hold that which belonged to him, but was expressly given by the will to a third person. Now I apprehend that there is good ground, as regards the intention of the testator at least, which is admitted upon a.11 hands, to be the foundation upon which the right to demand an election exists, if at all, for making a distinction between his undertaking bv his will to devise, a specific, definite property, which is not his own, the locality, extent and value of which are all completely within his knowledge, and *506 immediately under his view, as it were, and that of undertaking to pass by his will all the real estate which he shall thereafter acquire. As to the first, it being fully within his knowledge and under his view, he is capable of forming an opinion in respect to it, and of exercising his judgment upon it, and may come to a conclusion in his own mind, .that it will suit the person to whom he is giving it, better than the real owner, and that that, which he is giving to the latter, is not only of more value, but will suit him in every other respect better than what he is taking from him. Under this view, the conduct of the testator becomes rational, and consistent w’ith what must be presumed to be the first object with every testator, to wit: that of bettering the condition of his devisee or legatee. But in regard to property that is unknown, and as yet has not come into.being, the same course of reasoning cannot be adopted; nor can, what niust be considered the first and great object of the testator, be generally attained by it. He may acquire real estate thereafter, or he may not;' but whether he does or not, it is utterly impossible that he can dispose of it, before he shall have acquired it, from the same motives, and under the same view and judgment that might govern and direct him after it is had. As the testator then cannot be actuated by the same motives in disposing of that which has neither locality nor value, that might reasonably influence him in disposing of that which has both, and at the same time belongs to him; it would be wrong to apply the same rule to both cases.
It is also worthy of consideration, that, although our statutes regulating the disposition of intestates’ estates do not control or restrain men from giving away their estates as they please, except as to one-third of their real estates, which is secured for life to their widows, should they leave any at their deaths, yet they serve to show, that it was thought the interest of the state and that the happiness of its citizens would be best promoted by causing the estates of persons dying intestate, to be parted and divided equally among their surviving relatives, with a view no doubt, among other objects, to preserve equality of condition in this respect, as far as may be consistent with the constitution and the principles'of natural justice. Those, therefore, upon whom these statutes.have cast the ownership of a deceased’s estate, are entitled to favour and protection, and ought not to be deprived thereof, unless by some known rule of equal authority and of unambiguous import. Besides, is there not, I would ask, an inconsistency in a testator's purchasing and taking a conveyance of real estate to himself and his heirs, for his own and their use, and not for the use of the devisees named in his will, after having thereby previously given all such after-purchased estate to them 1 Lord Holt in Bunker v. Cooke, (Fitzg. 229, 232; Gilb. on Dev. 132, 136,) declared it to be repugnant to the will; and if so, I think that I may safely add, that it would therefore be against all *507 reason to permit the will to overrule the use declared in the subsequent deed of purchase.
After the decision of Thellusson v. Woodford, the case of Churchman v. Ireland, (Russell & Mylne, 250, S. C. 4 Cond. English Chan. Rep. 412,) came before Lord Brougham, upon an appeal from the decree of Sir Launcelot Shadwell, Vice Chancellor: in which he affirmed the decree of the Vice Chancellor; deciding, that the heir at law, who took some benefits under the will, was bound to elect, where the testator had devised and bequeathed “ all and singular my estate and effects whatsoever and wheresoever, and of what nature or kind soever, both real and personal, which I shall die possessed of, interested in, or entitled unto:” and afterwards purchased real estates. It is true, that the decision of this case is in accordance with the principle laid down in Thellusson v. Woodford; but it is at variance with the rule of construction, adopted by Sir John Leach, Master of the Rolls, in Johnson v. Telford, (Russell & Mylne, 244, S. C. 4 Cond. Eng. Ch. Rep. 409,) as to the words of the testator,showing, as it was contended, an intention to devise after-acquired real estate, and comes in direct conflict with the construction put on similar words, relative to the intention of the testator in this respect, by Sir Thomas Plumer, Master of the Rolls, in Back v. Kett, where the testator by his will, desired his executors to sell whatsoever real estates he might die possessed of, and afterwards bought real estate: it was held that the heir who took benefits under the will, was not bound to elect. In this case, Sir Thomas Plumer said, the heir is not to be disinherited except by express words. And in speaking of the case of Thellusson v. Woodford, which was affirmed in the House of Lords, (1 Dow, P. C. 249,) he said it had gone far enough, and that without such high authority, he should have entertained doubts in it; in short, showing, as Lord Brougham very fairly admits, “that had it originally fallen to him to decide it, he would have come to a different conclusion.” Churchman v. Ireland.
Among the English cases decided before the revolution, which are the only cases of our mother country that are regarded .here as of binding authority, the Anonymous case in Gilb. Eng. Rep. 15, may seem to some not to come literally within Lord Eldori’s description of the case of an election. According to the report, w'hich is nothing more than a bare abstract of the case, it would seem that where a testator seised of two acres, one in fee-simple and the other in tail, and having two sons, devised the fee-simple to the elder, who was the issue in tail, and the fee-tail acre to the younger-; and the elder son, upon the death of the testator, entered upon the fee-tail acre, it was held by Lord Cowper, in 1709, upon a bill filed by the younger son that the elder son was bound either to let the younger son enjoy the fee-tail acre, or otherwise the younger was entitled to have an equivalent out of the fee-simple acre; and it was so decreed, *508 In the subsequent case, however, of White v. White, mentioned before, decided by Lord Bathurst, in March, 1770, which is the latest English case of binding authority, on this subject, the case in Gilbert is strongly impeached, if not overruled, unless the circumstance of the devises being made exclusively to children of the testator, be sufficient to preserve its authority, which may have had some weight, •as it existed also in the earlier cases of election above-named. Lord Cowper, indeed, confines the principle of election expressly in Noys v. Mordaunt, to the case of children ; his words are, “ in all cases of this kind, where a man is disposing of his estate among his ■children, and gives to one fee-simp'le lands, and to another lands in-tailed or under settlement, it is upon an implied condition that each party acquit and release the other;” 2 Vern. 582. This circumstance is also particularly noticed by Lord Hardwicke, in Hearle v. Greenbank, (1 Ves. 307); and again, in Boughton v. Boughton, (2 Fes. 15, 16,) as having some influence in making a case, a case of election, that otherwise, perhaps, might not be so considered. In White v. White, the question was not between children, and there it was ruled that the heir in tail, whose estate was disposed of by the will •of his ancestor to uses different from the intailment, and to whom the profits of all the real estate of the testator, including lands held by him in fee-simple, w'ere given during his life, as also a legacy of a thousand pounds, charged upon the real estate, was entitled to have the legacy and the profits of the fee-simple estate during his life, as well as the estate tail, which he had entered into after the death of the testator, and by a common recovery suffered for that purpose, had converted into a fee-simple: and a decree accordingly was made in his favour. Now it is very obvious, that by applying the principle of election to the cases of Thellusson v. Woodford and Churchman v. Ireland, was carrying it much beyond what it would have been, had it been extended to the case of White v. White, and greatly beyond, as I have already said, wha.t was ever before thought ■of. The whole course of Lord Hardwicke’s reasoning in Hearle v. Greenbank, as also in Boughton v. Boughton, is opposed to the ■decisions, in those two cases of Thellusson v. Woodford and Churchman v. Ireland, and directly opposed, as it appears to me, to the recovery of the plaintiffs in this case. In Hearle v. Greenbank, page 307, he says, “ when the obligation arises from the insufficiency of the execution or invalidity of the will, there is no ■case where the legatee is obliged to make an election, for there is no will of the land.” So he again, repeats, where the land cannot pass by ■the will, the legatee cannot be called on to make an election. And ■in Boughton v. Boughton, as well as in Hearle v. Greenbank, he considers a will disposing of the real estate, but not executed in conformity to the statute, as no will in regard to if, though good as to the personal estate and sufficient to give the legacy to the legatee; but, because .it can have no operation upon the real estate, it is therefore *509 insufficient to put the legatee to his election. Now, is not all this directly applicable to the casé before us ? Here the will, though good to pass all the personal estate, which the testator had at the time of his death, and likewise all the real estate which he owned or had any interest in, at the date of this last codicil thereto, yet is void, invalid and inoperative on the very face of it, so far as he undertakes to dispose of real estate which he should purchase or acquire thereafter. In effect it is no will with respect to the lands in question, they having been purchased by the testator after the making of the last codicil to his will, and therefore, according to the reasoning of Lord Hardwicke, the defendants cannot be required to make an election.
But where the testator makes a bequest or devise annexing in express terms, a condition to it, as in Streatfield v. Streatfield, and Boughton v. Boughton, it must be evident to the mind of every one, that, as the donor in such case, has the right to prescribe the terms or condition, upon which he is willing to bestow what belongs to him, they ought and must be complied with; otherwise, the legatee or devisee cannot claim the gift. But in other cases, where the rule of election has prevailed, it is perhaps somewhat difficult to discover and comprehend fully the ground or reason of its application. In Noys v. Mordaunt, (2 Vern. 582,) it is said by Lord Keeper Cowper, to be “ upon an implied condition, that each party acquit and release the other.” In Streatfield v. Streatfield, Ca. Temp. Talb. 183, Lord Talbot says “ this court (meaning chancery,) compels the devisee, if he will take advantage of the will, to take entirely, but'not partially under it, there beingo. tacit condition annexed to all devisesofthis nature, that the devisee do not disturb the disposition which the devisor hath made,” which Lord Hardwicke construes an “ implied intent, that whosoever takes by the will, shall comply with the whole;” (2 Ves. 14,) or as he says in another part of the same page," upon a condition implied to this effect by construction of the court.” Lord Eldon seems also to consider it as resting upon an implied condition, that the legatee or devisee shall part with his own estate or he shall not take the bounty. 10 Ves. 609. In Morris v. Burrows, (2 Atk. 629,) Lord Hardwicke speaks of it as “ depending upon the equity of the court, which is, that no person shall take bv the will, and at the same time do any thing that shall destroy the will.” See also 3 Atk. 715. The equity here meant, as I apprehend, is an obligation arising from rather an artificial than a natural construction of the will by the court, that is conceived to become binding on the conscience of the legatee or devisee, to observe the implied intention of the testator whose bounty he accepts, by fulfilling what is called in other terms the implied condition annexed by the construction of the court and not by the testator to the gift; and, though spoken of as a condition, it certainly has not been regarded as being of the same force as an express condition, 'because in Boughton v. Boughton, where the testator by a will sufficient to dispose of his personal estate, but not being so in *510 regard to the rest, for want of conformity to the statute in its execution,gave his real estate to one ofhis children, and a contingent legacy of£1200 to a grandchild, who became his heir at law on his death, expressly directing, that if any who received benefit by his will should dispute any part of it, they should forfeit all claim under it; and it was held, that the heir was bound to elect: yet it is well settled, that without such express condition, a will so defectively executed does not impose the obligation of election on the heir; but that he is entitled, notwithstanding, to demand and receive the legacy, and at the same time, to take the real estate by descent. Hearle v. Greenbank, (3 Atk. 715. 1 Ves. 306, 307.) Carey v. Askew, (1 Cox 241. 1 Ves. 493, 496-7.) Goodrich v. Sheddon, (8 Ves. 481.) Thellusson v. Woodford, (13 Ves. 223.) Now where a condition is necessarily implied by a construction in regard to which there pan be but one opinion, there can be no good reason why the result or decision of tbe court should not be the same as in the case of an express condition, and the donee bound to make an election in the one case as well as the other. Seeing, however, that this is not so, the true foundation then of the obligation to make an election, must be, because it would not be fair or equitable in the donee to accept the gift, and at the same time, do any thing that would seemingly be in opposition to what is deemed to have been the intention or wish of the donor in relation to it. The intention of the donor or testator ought doubtless to be the polar star in such cases, and whenever it appears from the instrument itself, conferring the benefit, with a certaintyThat will admit of no doubt, either by express declaration or words that are susceptible of no other meaning, that it was the intention of the donor or testator that the object ofhis bounty should not participate in it, without giving his assent to every thing contained in the instrument, the donee ought not to be permitted to claim the gift unless he will abide by the intention and wishes of its author. So far, also, as the English decisions on this subject, made previously to our revolution, go, I feel myself bound by them as having become the rules of property ; but I am not disposed to carry the rule of election further, and to extend it to cases, where, if we do not confine ourselves to the valid and operative parts of the instrument, we are likely to be led into error by endeavouring to give effect to an intention imputed to the donor, which at best, perhaps, is founded upon mere conjecture. In the case, under consideration, the will and codicils are both invalid and inoperative as to the lands in dispute. In fact, they had no existence as regarded the testator at the time of making his will or the codicils thereto: he not having then even contracted for the purchase of them, rendered it improbable, if not indeed, impossible, that his mind should have been brought to bear upon them and dispose of them in the same manner that he would have done, had they formed at that time a part of his estate. It may, therefore, well be thought to be but conjecture, how he would have disposed *511 of them if he had made or republished his will after they became his property. And certainly, as Lord Commissioner Eyre has said, the heirs ought not to be conjectured out of their rights.
But supposing the plaintiffs had had the right upon the death of the testator to have put the defendants to this election, still may it not be questionable whether they could recover the lands in dispute? This right to recover must depend, I apprehend, upon what is meant by election in such case, and the effect of it. Now that the defendants, immediately upon the death of the testator, became invested with the title to the lands, not only in law but in equity, and upon that ground recovered the possession of them in the actions of ejectment brought by them for that purpose, cannot be denied. Then unless the receipt of the legacies by them under the will since the death of the testator, should have created a forfeiture of their right, at least to the possession, and have transferred it to the plaintiffs, I am unable to discover upon what principle the latter can claim to recover the lands. It cannot be pretended, that by the terms of the will, the lands are given, in any event, to the plaintiffs. On the contrary, it has been decided, that the will or the codicils thereto, had no operation upon them whatever, but that they descended by operation of the statute, passing intestates’ estates to the defendants. This would seem to make it necessary then, that there should have been some act done on their part, by agreement or otherwise, by which they passed their right to the land, to the plaintiffs. An agreement made with such view, is out of the question ; none is even alleged. Then is the receipt of the legacies, considering it as an election by the defendants to take under the will, sufficient to produce this effect? Certainly no decision has ever been made, giving such effect to it. A receipt of a legacy under the will has never been held to be a forfeiture of the right to the thing which is acquired by the legatee, through a title paramount to the will, or otherwise than under it. It has been considered at most, as only creating an obligation, to indemnify the disappointed claimant, to the extent of the value of what was designed for him by the will, out of that which is thereby given to the party electing, if it should be sufficient; and also, as authorizing a court of equity, with a view to secure such indemnity, to sequester that which is elected to be so taken under the will. In no case, however, does election create an absolute for-forfeiture, when the value of the thing elected to be taken under the will, is more than sufficient to make a compensation to the disappointed party, equal in value to his loss; for if there should remain a surplus beyond that, the party electing is entitled to it; indeed, it does not belong to a court of equity, at any rate, to pronounce forfeitures, or to impose penalties ; on the contrary, it ofteg relieves from them; and that too in cases where they have been created by the express agreement of the party himself seeking relief, through his neglect to perform his engagement according to the tenor thereof. In. these *512 cases it is generally granted, if the loss or injury sustained by a failure to fulfil the agreement, be of a nature to admit of compensation. In cases of election growing out of wills, where no condition, alternative, or forfeiture is declared or provided for in terms, it is only for the purpose of compelling that to be done, which is considered barely equitable and no more, that a court of chancery can interpose and exercise its authority. Compensation or indemnification then, I take it, is the most that a court of equity can decree in such case; and that is done generally, out of the money or property given by the will to the party electing, by sequestering it, so far as may be necessary for that purpose. And unless the disappointed party has a lien for his compensation on this fund, I am inclined to think that he can have none upon any other. And if this be so, I can perceive no possible ground upon which the plaintiffs here can claim to recover the possession of the lands in question. For without having, at least a lien upon them, in their favour, there is not even the shadow of a right to entitle them to it. To hold that the obligation of election gave the plaintiffs a right to recover the lands in question, would be carrying it beyond every thing that has ever been thought of, even of late in England. It is quite certain that the defendants never received the legacies upon any agreement, or as a consideration for surrendering any portion whatever of their right to the lands: such a thing could never had entered into their minds, and of course their assent could never have been given to such a proposition, either impliedly or otherwise: and nothing but a very ingenious and artificial course of reasoning, could ever bring the mind to the conclusion, that the testator could have contemplated the requisition of such assent; and I am not satisfied, but it is a stretch of power on the part of a court of equity, at all times, to interfere with the rights of a legatee or devisee in such case. It is most likely, Lord Commissioner Eyre thought so, when he said, “ Putting a devisee to his election, however just and reasonable it may be, was certainly a strong operation of a court of equity.” (1 Ves. jr. 523.)
But taking this case to be a case of election, and that the plaintiffs acquired a lien upon the lands in dispute by the defendants receiving their legacies, and under such lien had the right to retain the possession of them until compensation were made; and beyond this I think it is impossible to raise the colour of claim to the possession of the lands, may it not admit of some doubt, whether, after having suffered that possession to be recovered from them, they can now sustain an action to recover it back. Though, generally, I admit nothing short of two judgments, rendered in an action of ejectment between the same parties, in favour of the same one of them, is sufficient to form a bar to another action, founded on the same claim to the land between them, yet I am not altogether satisfied, that this rule extends to the case of an ejectment brought merely *513 as a substitute for a bill in equity, to obtain what in effect is considered equivalent to a decree of specific performance, or the possession of the land as a pawn or pledge for the payment of a debt or sum of money; for, it may, possibly, be thought that the only question presented in such cases, is one of personal duty, arising out of a mere personal obligation, and therefore, according to analogy, one decision ought to settle it. This question, however, being out of the case, I intimate no opinion in regard to it. Again, admitting that the receipt of the legacies by the defendants, gave the plaintiffs a right to the possession'of the lands, until they should be compensated or indemnified : quaere, whether, they being in the possession of them at the time, ought not to have set that up as a defence in the former actions of ejectment ? or was it competent for them to wave such equitable defence, and after having done so, to make it the ground of recovery of the possession again in this action? It may not be proper to attempt an answer to these questions before they arise, which possibly may never happen in the case of an election, as it may not be thought advisable to make the experiment, after the decision of the court in this case.
If, however, it be as I think it is, that the disappointed party cannot claim and recover that which is held by the legatee, as the lands in this case are by the defendants, under another and different title from the will, after having received the legacy without objection, it may be thought that he ought to have a remedy by a personal action against the legatee to recover from him, at least as much of the legacy received, as would compensate for the loss. Such action may possibly be sustainable, but then, perhaps, it may be made a question, whether all reasonable vigilance ought not to be used by the plaintiff, in order to avoid the necessity of bringing it, by giving notice within a reasonable time, to the executors not to pay the legatee, until the objection to his receiving the legacy, on the ground of its being a case of election, shall be settled and removed; and by undertaking at the same time to indemnify and save the executors harmless, for withholding payment; because there are cases where an objection to the payment of money may be held good in equity, to prevent the receipt of it, but not sufficient to enable the party, who might have interposed the objection, to maintain an action for it, after it shall have been paid without objection. I am not prepared to say, but that a party claiming to recover in such an action, might by his neglect or acquiescence, have his demand exposed to this objection. In the course of the argument it was insinuated, that the executors in such case, might be made to pay the legacy a second time, though no notice not to pay it to the legatee had been given them; but I think it very clear, that this proposition is altogether untenable; for without notice, they have not the means of knowing whether it be a case of election or not; and therefore are not bound or pre *514 sumed to know, and will stand justified in paying it to the legatee named in the will.
Under every view almost, that can be well taken of the case, the Court are satisfied, not only upon authority, but upon reason and principles of sound policy, that the plaintiffs are not entitled to recover. Judgment must therefore be entered for the defendants.
Judgment for defendants.
Sergeant, J., took no part in the decision of this case.