# Van Dyke's Appeal.

1. Compelling an election under inconsistent provisions in a will is not exclusively within the jurisdiction of the Orphans' Court.

2. Consent cannot give jurisdiction.

3. The jurisdiction of the Orphans' Court within its appointed orbit is exclusive.

4. The jurisdiction of the Orphans' Court is not exclusive in every case which may incidentally bear upon the settlement of a decedent's estate.

5. A testator gave legacies to his daughters which absorbed the bulk of his estate in Pennsylvania, and by the same will gave his real estate in New Jersey to his sons. The will was not so executed as to pass real estate in New Jersey. In a proceeding to compel the daughters to elect, *Held*, that it fell within the authority belonging to a court of equity in cases of trust.

6. The legal title being in the daughters as heirs, if a case of election, equity would hold them bound as trustees to compensate the disappointed devisees.

7. The decree of a court of equity would be conclusive upon the daughters in a settlement of the account of the executors.

8. In construing a bequest of personalty within its jurisdiction a court of

10 P. F. SMITH—31

[Van Dyke's Appeal.]

Pennsylvania may read a whole will, although invalid as to land in another state.

9. The circumstances and the will here presented a case of election.

10. Election is grounded on the intention of the testator, and resort can be had to all parts of the will to ascertain it.

11. Equitable election rests on the principle of compensation as well as forfeiture.

February 9th and March 4th 1869.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the court at Nisi Prius: In Equity: No. 2, to July Term 1868, in proceedings in which James C. Van Dyke, Thomas Kittera Van Dyke, Nina M. Van Dyke, Florence A. Van Dyke, Arthur K. Van Dyke, and Helen M. Van Dyke, minor children of James C. Van Dyke, deceased, by their guardian Elizabeth S. Van Dyke; Louise K. Van Dyke; and Clara A. Van Dyke, Ella F. Van Dyke, John P. Van Dyke and Benjamin F. Van Dyke, minor children of Benjamin Franklin Van Dyke, deceased, by their guardian Rebecca P. Van Dyke, were plaintiffs; and Elizabeth Van Dyke, widow, Rush Van Dyke, Henry J. Van Dyke, and Frederick A. Van Dyke, executors of Dr. Frederick A. Van Dyke (the elder), deceased; Charles H. Fernald and Margaret P. his wife (late Margaret Van Dyke); Mary A. Van Dyke; Frederick A. Pease, Elizabeth Pease, and Augusta Pease, minor children of Elizabeth Pease, deceased, (late Elizabeth Van Dyke); and the said Rush Van Dyke, Henry J. Van Dyke, and Frederick A. Van Dyke, in their own right, were defendants.

The case was heard at Nisi Prius on bill and answer, which with the exhibits, present substantially the following facts:—

Dr. Frederick A. Van Dyke, a citizen of Pennsylvania, residing and having his home in Philadelphia, died November 18th 1867, leaving a will, bearing date November 5th 1861, and codicils dated July 4th 1863 and May 20th 1866—which were proved in Philadelphia on the 25th of November 1867. Letters testamentary were granted to those of the executors named in the will who survived him.

Dr. Van Dyke left to survive him his widow, Mrs. Elizabeth Van Dyke, and the following named children, or issue:

1. Rush Van Dyke, a son; 2. Fred. A. Van Dyke, Jr., a son; 3. Henry J. Van Dyke, a son; 4. James C., Louise K., Thomas K., Nina M., Florence A., Arthur K., Helen M., children of James C. Van Dyke, a deceased son; 5. Clara A., Ella F., John P., Benjamin F., children of Benjamin F. Van Dyke, a deceased son; 6. Margaret P. Fernald, a daughter; 7. Mary A. Van Dyke, a daughter; 8. Frederick A. Pease, Elizabeth Van Dyke (Pease), Augusta Van Dyke (Pease), children of Elizabeth Pease, a deceased daughter.

[Van Dyke's Appeal.]

The decedent was owner of personal estate amount-
ing, according to inventory filed, to .    .    .    $11,100.70
Of real estate in Philadelphia valued at      .    .      38,000.00
And of real estate in New Jersey (since sold·for) .      70,000.00
                                                    —————————
                                                    $119,100.70

By his will he gave to his living daughters each
$10,000, making    .    .    .    .    .    .    $20,000.00
And to the Pease children (the issue of a daughter)    12,000.00
                                                    —————————
                                                    $32,000.00

The residue of the Philadelphia estate and the New Jersey
estates he devised·to the five sons (and the issue of such as were
deceased) in equal shares.

The will having no subscribing witnesses, could not pass real
estate in New Jersey; and, as to the testator's real estate there,
he died intestate, and his children take in equal shares.

The interests of the testator's children, derived from the will
and the intestacy, are as follows :—·

The personal estate is valued at  '.    .    .    .    $11,100.70
The real estate in Philadelphia    .    .    .    .      38,000.00
                                                    —————————
                                                    $49,100.70
The gifts to his daughters amount to    .    .    .    $32,000.00
                                                    —————————
Leaving to be distributed among his five sons    .    $17,100.70
Or $3700 each.

The daughters take under the will about $10,000 each.

The latter take equally with the sons the estate in New Jersey.

In addition to the dispositions above stated, the testator ordered
as follows :—

"13th. I direct that no public inventory or sale of my house-
hold furniture shall be made; that it shall be taken charge of by
my executors, and kept by them until disposed of according to
devises made.    That so much as she may require shall remain in
possession of my wife, Elizabeth Van Dyke, for her use, the
remainder to be divided among my children, the articles only
excepted especially devised in this instrument, or designated in
my accompanying letter, to which I refer my executors, as well
as for directions for the disposal of my body.

"14th. I direct and enjoin on my heirs that no exception be
taken to this my will or any part thereof on any legal or techni-
cal account, and that any property or possession which may have
been overlooked or omitted to be mentioned, shall be disposed of
by an equal distribution among my children.

[Van Dyke's Appeal.]

"15th. In case either of my married daughters should die without issue, or surviving children, then as to the share or shares of her or them, I direct that such share or shares devised by me in trust for her or them, shall be equally divided among my other children, and the surviving children of any one of them who may be deceased."

The bill alleges that the testator meant to exclude all but his sons from his New Jersey property; and that he intended that his daughters should take no more than the legacies he had bequeathed to them.

The prayer is that the daughters may be put to their election, either to give effect to the whole will, by relinquishing their claim upon the New Jersey property, or from their legacies to compensate the sons for their loss in consequence of the daughters sharing with them the New Jersey property.

Mr. Justice READ, at Nisi Prius, dismissed the bill.

The plaintiffs appealed, and assigned the dismissal of the bill for error.

The case was argued February 9th and reargued March 4th 1869.

*E. C. Mitchell* and *E. Olmsted*, for appellants.—The Supreme Court has original jurisdiction in this case. Act of June 13th 1836, § 13, Pamph L. 789, Purd. 401, pl. 3, gives jurisdiction for " the prevention or restraint of the commission or continuance of acts contrary to law, and prejudicial to the interests of the community, or the rights of individuals," and for " care of trust moneys and property :" Hagner *v.* Heyberger, 7 W. & S. 104; Wistar *v.* McManes, 4 P. F. Smith 328.   Equity powers are to be construed liberally : Unangst's Appeal, 5 P. F. Smith 138; Kirkpatrick *v.* McDonald, 1 Jones 393; Yard *v.* Patton, 1 Harris 282.

Supposing the Orphans' Court to have no jurisdiction of the subject-matter, the plaintiffs would be without remedy, if this court have no jurisdiction.   For the land is without the state, and the remedy by an action of ejectment could not be resorted to : Wistar *v.* McManes, *supra ;* Stockdale *v.* Ullery, 1 Wright 486; Cronise *v.* Cronise, 4 P. F. Smith 255; Hunter's Appeal, 4 Wright 194; Wharton *v.* Sch. Directors, 6 Id. 362.

The Orphans' Court has not exclusive jurisdiction : Act of March 29th 1832, § 4, supplied by Act of June 16th 1836, § 19, Pamph. L. 792, Purd. 764, pl. 8; Lewis *v.* Lewis, 1 Harris 79; Bickley *v.* Biddle, 9 Casey 276; Shollenberger's Appeal, 9 Harris 337; Ashford *v.* Ewing, 1 Casey 213; Loomis *v.* Loomis, 3 Id. 233; Black *v.* Black, 10 Id. 354; Lyman *v.* Byam, 2 Wright 475.

The court has jurisdiction over the subject, although the lands are situate in another state.

The defendants are in its jurisdiction, and the will is a good

will here: Penn and Lord Baltimore, 1 Vesey 144; Vaughan v. Barclay, 6 Wharton 392. In England there is no doubt the daughters, in this case, would be bound to elect: Dundas v. Dundas, 2 Dow & Clark 349; Maxwell v. Maxwell, 13 Eng. L. & Eq. 440.

A party is bound to choose between two inconsistent or alternative rights or claims, in cases where there is a clear intention of the person from whom he derives one, that he should not enjoy both: Story's Eq. § 1075. In cases of implied election, the foundation is the intention of the author of the instrument; which, extending to the whole disposition, is frustrated by the failure of any part: § 1077; Crosbie v. Murray, 1 Vesey, Jr. 557; The Mayor, &c., v. Davis, 1 Wharton 502. And in cases where the will was not well executed, in the place of the forum, the heir has taken a benefit under the will, as well as inherited as heir. If the will was not made according to all requirements of law, it could not be read. It must be a perfect will in the forum: Hearle v. Greenbank, 1 Vesey, Senr. 307; Thellusson v. Woodford, 13 Vesey 209.

But the heir is put to his election, where the will was not effectual to pass real estate, if the valid bequest to him was so inseparably connected with the invalid devise as to form *rem integram;* as, where the legacy was given upon condition that the heir would not dispute the devise, either express or clearly implied : Boughton v. Boughton, 2 Vesey, Senr. 12. But where the will was valid in the jurisdiction where the cause was heard, the courts have never refused to put the heir to his election : Brodie v. Barry, 2 Ves. & Beames 127; McCall v. McCall, Drury 283; Whistler v. Webster, 2 Vesey, Jr. 367; Johnson v. Telford, 1 R. & M. 244; Allen v. Anderson, 5 Hare 163; Ker v. Wauchope, 1 Bligh 1; Trotter v. Trotter, 4 Id. 502.

The rule against putting the heir to his election was upon the words of the Statute of Frauds, which were very strong: That a will unless executed and attested as there commanded, "should be utterly void and of none effect:" Sheddon v. Goodrich, 8 Vesey, Jr. 481.

The doctrine of election is part of the law of Pennsylvania: Wilson v. Bigger, 7 W. & S. 125; Preston v. Jones, 9 Barr 459; Stump v. Findlay, 2 Rawle 174; Cauffman v. Cauffman, 17 S. & R. 24; Randall v. Silverthorn, 4 Barr 176; Fenstermacher v. Moyer, 11 Casey 354; 2 Sugd. on Powers 165.

The fourteenth item of the will contains almost a condition that every beneficiary shall take upon condition that effect shall be given to every part of his will.

*C. E. Morgan, Jr.,* and *W. A. Porter,* for appellees.—The will of Dr. Van Dyke, not having been executed with the forms required

by the laws of New Jersey to pass real estate there, is not to be read for the purpose of raising a case of election against the heirs at law, unless it be shown that there is an express condition annexed to the legacies, that the defective devises be confirmed.

In the will there is no such condition. The transfer of real property is regulated by the *lex rei sitœ;* and its validity or invalidity must be determined by the law of the state in which the lands are situate: United States *v.* Crosby, 7 Cranch 115; Robinson *v.* Campbell, 3 Wheaton 212; Cornelson *v.* Browning, 10 B. Munroe 428; Barnes *v.* Brashear, 2 Id. 382; Story on Conflict of Laws, § 474; Kerr *v.* Moon, 9 Wheaton 565; Atkinson *v.* Rogers, 14 La. An. Repts. 633; Hughs *v.* Hughs, Id. 85.

The rule contended for by the plaintiff is not applicable, where the devise is inoperative, because there is not a legal execution of the power to devise, no legal capacity to devise, or because the will is not so executed as to pass real property. In all such cases, the heir at law may take both the land and the legacy upon the ground that there is no will of the land; that in order to compel an election, the intention of the testator must be clear upon the face of the instrument: Hearle *v.* Greenbank, 1 Vesey, Senr. 299; s. c. 3 Atkins 695; Noys *v.* Mordaunt, 2 Vernon 581; Boughton *v.* Boughton, 2 Vesey, Senr. 12; Carey *v.* Askew, 1 Cox 241; Sheddon *v.* Goodrich, 8 Vesey, Jr. 481; Thellusson *v.* Woodford, 13 Id. 209; Buckeridge *v.* Ingram, 2 Id. 666; Gardiner *v.* Fell, 1, Jacob & Walker's Ch. Rep. 22; Redfield on Wills, Part II. 744; Jeremy's Equity 537; 1 Jarman on Wills 381; 2 Williams on Executors 1, 299; Adams' Equity 216; Powell on Devises 439, note 6; 2 Maddock's Chancery 49; Allen *v.* Poulton, Belt's Supp. to Vesey, Senr.

The cases cited by the appellant simply decide, that the court of the domicil of the testator is the proper tribunal before which to bring cases of election; and that the law which is to guide the court in determining each case, is the law of the domicil upon the subject of election; and not, as the appellants appear to argue, the law of the domicil as to the transfer of real property within its own jurisdiction: 1 McLaren's Law of Wills and Succession 41. The principle that where a bequest to an heir is operative, and a devise in the same will is not, because of defective execution, the heir will not be put to his election, has been adopted in this country: Melchor *v.* Burger, 1 Dev. & Battle (Eq.) 634; McElfresh *v.* Schley, 2 Gill 182; Jones *v.* Jones, 8 Id. 197; Kearney *v.* McComb, 1 C. E. Green 189; Martindale *v.* Warner, 3 Harris 478; Philadelphia *v.* Davis, 1 Wharton 490.

There is no express condition annexed to the legacies given by the will of Dr. Van Dyke.

The only exception to the rule is where there is an express condition annexed to the legacies or valid portions of the will, that

the legatee, who is also the heir at law, shall not claim the land. In clause 14 there is no condition at all; there 'are no words of forfeiture, nor is there a devise over; and consequently this clause is simply *in terrorem*, and of no binding force whatever: 2 Williams on Executors 1035; 2 Maddock's Chancery 38; Morris *v.* Burroughs, 1 Atkyns 404; Marple *v.* Bainbridge, 1 Maddocks 590; 2 Powell on Devises 295; Gilbert's Law of Wills 159; Chew's Appeal, 9 Wright 229; Pray *v.* Belt, 1 Peters (U. S. S. C.) Rep. 670.

The appellees submitted:—

1. The question of election is to be determined by the law of election of the domicil of the testator.

2. The rule of Hearle *v.* Greenbank, 1 Vesey, Senr. 307, is the law of election in England, except in the cases of copyholds, and Scotch heritable property, which could not be transferred simply by will, and as to which such an instrument was not *void*, but merely voidable, and might be read as evidence of the intention of the testator, in order to raise a case of election; whereas if the property had been English freeholds, no such case could have been raised.

3. Throughout the United States the rule of Hearle *v.* Greenbank has been invariably adhered to, and in Pennsylvania has been distinctly recognised, and its authority acknowledged.

The opinion of the court was delivered, May 11th 1869, by

SHARSWOOD, J.—No question has been made by the parties as to the jurisdiction of a court of equity in this state to give the relief prayed for in this bill. It having been suggested that it would be an encroachment upon that, which, by the Acts of Assembly, is exclusively conferred upon the Orphans' Courts, the attention of the counsel was directed to this point when the cause was ordered for reargument.

The learned and able gentlemen retained for the defendant, have, however, frankly conceded it. Consent, indeed, cannot give jurisdiction, and it is, therefore, deemed proper to say, that we entertain no doubt upon the subject. The Orphans' Court, by the Act of June 16th 1836, § 19, Pamph. L. 792, has jurisdiction of proceedings for the recovery of legacies, of the settlement of the accounts of executors, the distribution of the estates of decedents, and in all cases wherein executors may be possessed of, or in any way accountable for any real or personal estate, of a decedent. It is also the settled doctrine that the jurisdiction of that court within its appointed orbit is exclusive: Whiteside *v.* Whiteside, 8 Harris 473; Shollenberger's Appeal, 9 Harris 337; Black *v.* Black, 10 Casey 354; and no doubt a court of equity cannot interfere with a matter of which the Orphans' Court has

exclusive jurisdiction: Loomis *v.* Loomis, 3 Casey 233; Bickley *v.* Biddle, 9 Casey 276.

But it is not in every case, which may incidentally bear upon the settlement of the estate of a decedent, that its jurisdiction is .exclusive; otherwise, all remedies for the recovery of claims against such estates would necessarily be drawn within its vortex. This has never been pretended: McLean's Executors *v.* Wade, 3 P. F. Smith 146; Sergeant's Executors *v.* Ewing, 6 Casey 75. This is not a proceeding to recover a legacy charged on land, nor to compel a settlement or distribution, but falls within the admitted scope of the authority of a court of equity in cases of trust. The legal title being in the defendants, as heirs at law, that court, if it is a case of election, holds them bound as trustees to compensate the devisees disappointed of the bounty intended for them by the testator.

The jurisdiction in such a case is expressly recognised as concurrent in Lewis *v.* Lewis, 1 Harris 79. The decree of this court will doubtless be conclusive as to the subject-matter upon the final settlement of the account of the executors, but so would a judgment against them in a court of law, if no fraud or collusion were shown. We pass, therefore, to the main question.

It may certainly be considered as settled in England, that if a will, purporting to devise real estate, but ineffectually, because not attested according to the Statute of Frauds, gives a legacy to the heir at law, he cannot be put to his election: Hearle *v.* Greenbank, 3 Atk. 695; Thellusson *v.* Woodford, 13 Ves. 209; Breckinbridge *v.* Ingram, 2 Ves. Jr. 652; Sheddon *v.* Goodrich, 8 Id. 482. These cases have been recognised and followed in this country: Melchor *v.* Burger, 1 Dev. & Batt. 634; McElfresh *v.* Schley, 1 Gill 181; Jones *v.* Jones, 8 Gill 197; Kearney *v.* Macomb, 1 C. E. Green 189. Yet it is equally well established, that if the testator annexes an express condition to the bequest of the personalty, the duty of election will be enforced: Boughton *v.* Boughton, 2 Ves. Sen. 12; Whistle *v.* Webster, 2 Ves. Jr. 367; Rex *v.* Wauchop, 1 Bligh 1; McElfresh *v.* Schley, 1 Gill 181. That this distinction rests upon no sufficient reason, has been admitted by almost every judge before whom the question has arisen. Why an express condition should prevail, and one, however clearly implied, should not, has never been, and cannot be, satisfactorily explained. It is said, that a disposition absolutely void, is no disposition at all, and being incapable of effect as such, it cannot be read to ascertain the intent of the testator. But an express condition annexed to the bequest of the personalty does not render the disposition of the realty valid; it would be a repeal of the Statute of Frauds so to hold. How then can it operate any more than an implied condition to open the eyes of the court so as to enable them to read those parts of the will which relate

to the realty, and without a knowledge of what they are, how can the condition be enforced? " As to the question of the election," said Lord Kenyon, while Master of the Rolls, "the cases which have been cited are certainly great authorities, but I must confess I should have great difficulty in making the same distinctions, if they had come before me. They have said you shall not look into a will unattested so as to raise the condition which would be implied from the devise if it had appeared; but if you give a legacy on condition that the legatee shall give the lands, then he must elect; however, I am bound by the force of authorities to take no notice whatever of the unattested will, as far as relates to the freehold estate:" Carey v. Askew, 1 Cox 241. "I do not understand," said Sir William Grant, "why a will, though not executed so as to pass real estate, should not be read for the purpose of discovering in it an implied condition, concerning real estate, annexed to a gift of personal property, as it is admitted it must be read, when such condition is expressly annexed to such gift. For if by a sound construction such condition is rightly inferred from the whole instrument, the effect seems to be the same as if it was expressed in words:" Brodie v. Barry, 2 Ves. & Beames 127. So Lord Eldon declared, that "the distinctions upon this head of the law appear to be rather unsubstantial," and that "there are, undoubtedly, these distinctions, and a judge, having to deal with them, finds a difficulty in stating to his own mind satisfactory principles on which they may be grounded:" Rex v. Wauchop, 1 Bligh 1. And in another place: " The reason of that distinction, if it was res integra, is questionable." " With Lord Kenyon, I think the distinction such as the mind cannot well fasten upon:" Sheddon v. Goodrich, 8 Ves. Jr. 482. Mr. Justice Kennedy has expressed the same opinion: " When a condition is necessarily implied by a construction in regard to which there can be but one opinion, there can be no good reason why the result or decision of the court should not be the same as in the case of an express condition, and the donee bound to make an election in the one case as well as the other:" City of Philadelphia v. Davis, 1 Whart. 510. There is another class of cases in England wholly irreconcilable with this shadowy distinction; for the heir at law of a copyhold was formerly put to his election, though there had been no surrender to the use of the will. This was previous to 55 Geo. III., c. 192, 1 White & Tudor's Leading Cases 239, note; yet, as Sir William Grant has remarked, " a will, however executed, was as inoperative for the conveyance of copyhold as a will defectively executed is for the conveyance of freehold estates:" Brodie v. Barry, 2 Ves. & Beames 130.

The mind instinctively shrinks from the task of frustrating the clear intention of a testator, aiming too to make all his children equal, upon authorites establishing a distinction without any dif-

ference. The precise point can never arise in this state, for happily our Statute of Wills of April 8th 1833, Pamph. L. 249, wisely provides that the forms and solemnities of execution and proof shall be the same in all wills, whether of realty or personalty. The case before us is of a will duly executed according to the laws of Pennsylvania, devising lands in New Jersey, where, however, it is invalid as to the realty by not having two subscribing witnesses. A court of New Jersey might hold themselves on these authorities bound to shut their eyes on the devise of the realty, and consider it as though it were not written, and so they have held Kearney *v.* Macomb, 1 C. E. Green 189. They might feel themselves compelled to say, with Ld. Alvanley, however absurdly it sounds: "I cannot read the will without the word 'real' in it, but I can say, for the statute enables me, and I am bound to say, that if a man, by a will unattested, gives both real and personal estate, he never meant to give the real estate:" Buckeridge *v.* Ingram, 2 Ves. Jr. 652. But a statute of New Jersey has no such moral power over the conscience of a court of Pennsylvania to prevent it from reading the whole will upon the construction of a bequest of personalty within its rightful jurisdiction. If a question could arise directly upon the title of the heirs at law to the New Jersey land, doubtless the court of any other state, upon the well settled principles of the comity of nations, must decide it according to the *lex rei sitæ.* We are dealing only with the bequests of personalty, and the simple question is, whether the testator intended to annex to them a condition. If, without making any disposition whatever of the New Jersey estates, dying intestate as to them, he had annexed an express proviso to the legacies to his daughters that they should release to their brothers all their right and title as heirs at law to these lands, it is of course indubitable that such a condition would have been effectual. We are precluded by no statute, to which we owe obedience, from reading the whole will, and, if we see plainly that such was the intention of the testator, from carrying it into effect.

Some cases have arisen in England upon wills disposing of English and Scotch estates, in which the judgments have not been harmonious, nor can any general principle be extracted from them bearing upon this question. In Brodie *v.* Barry, 2 Ves. & Beames 127, an heir at law of heritable property in Scotland, being also a legatee under a will not conforming to the law in Scotland as to heritable property, was put to his election. By that law a previous conveyance by deed was necessary, according to the proper feudal forms, upon which the uses declared by the will might operate. As by the law of Scotland the heir at law in such a case was put to his approbate or reprobate (the Scotch law term for election), and it was very similar to a will of copyhold, Sir William Grant considering the law of both countries to

be the same, felt himself relieved from the necessity of determining by which law the decision should be made.  Dundas *v.* Dundas, 2 Dow & Clark 349, was a case in the House of Lords from Scotland.  The will was formal according to the Scotch laws, but was invalid as to real estate in England under the Statute of Frauds.  Yet the decision of the Court of Session *putting* the English heir at law to his approbate or reprobate was affirmed.  This case is certainly in point, in favor of the position taken in this opinion.  It is true, that in the judgment pronounced by Lord Chancellor Brougham, then but recently raised to the wool-sack, it is not put on that ground.  He assumes, that in England, while a court of law would be precluded by the statute from looking at the disposition made of the realty, it was competent for a court of equity to do so, and that the Court of Session in Scotland had only done what a chancellor in England had a right to do: a distinction, it must be allowed, not adverted to in any of the previous cases, which were all in courts of equity. In McCall *v.* McCall, Drury 283, Lord Chancellor Sugden held that an heir at law of heritable property in Scotland, who was also the devisee of real estate in Ireland, under a will duly executed as to the Irish, but ineffectual as to the Scotch estate, was bound to make his election.  In the later case of Maxwell *v.* Maxwell, 13 Eng. L. & Eq. 443, which arose in England, the heir at law in Scotland was not put to his election but distinctly on the ground, that the will in the alleged disposition of the Scotch estate, had used only general words.  " If the will had mentioned Scotland in terms," said Sir Knight Bruce, Lord Justice, " or the testator had not any real estate ·except real estate in Scotland, that might have been a ground for putting the heir to his election. The matter, however, standing as it does, we are bound to hold that the will does not exhibit an intention to give or affect any property which it is not adapted to pass," and Lord Cranworth concurred in this view.

In this state of the authorities, we are clear in holding that we are not precluded by force of the New Jersey Statute of Frauds, from reading the whole will of the testator in order to ascertain his intention in reference to the bequest of personalty now in question.  We are equally clear that it is a case of election.  The intention of the testator does not rest merely upon the implication arising from his careful division of his property, among his children, in different classes, but he has indicated it in words by the clause: " I direct and enjoin on my heirs, that no exception be taken to this will, or any part thereof, on any legal or technical account."  It is true, that for want of a bequest over this provision would be regarded as *in terrorem* only, and would not induce a forfeiture: Chew's Appeal, 9 Wright 228.  But, as has been often said, the equitable doctrine of election is grounded upon the

[Van Dyke's Appeal.]

ascertained intention of the testator, and we can resort to every part of the will to arrive at it. "The intention of the donor or testator ought doubtless to be the polar star in such cases," says Mr. Justice Kennedy, "and wherever it appears from the instrument itself conferring the benefit, with a certainty that will admit of no doubt, either by express declaration, or words that are susceptible of no other meaning, that it was the intention of the donor or testator that the object of his bounty should not participate in it without giving his assent to everything contained in the instrument, the donees ought not to be permitted to claim the gift unless they will abide by the intention and wishes of its author:" City of Philadelphia *v.* Davis, 1 Whart. 510.

This, however, is not the only mode in which the equity of the case can be reached. The doctrine of equitable election rests upon the principle of compensation, and not of forfeiture, which applies only to the non-performance of an express condition: 2 Madd. Ch. 49. Besides, no decree of this court could authorize the guardians of the minors to execute releases of their right and title to the New Jersey lands, which would be effectual in that state. The alternative decree prayed for in the bill is that which is most appropriate to the case.

Decree reversed, and now it is ordered, adjudged and decreed, that the executors of the last will and testament of Frederick Augustus Van Dyke, deceased, shall pay to the defendants, Mary A. Van Dyke, Margaret P. Fernald, and Frederick A. Pease, Elizabeth Pease and Augusta Pease, such sum less than the amount of their respective legacies, as will compensate the said plaintiffs and the surviving sons of the testator for the value of the shares of the said legatees in the said real estate in New Jersey, and that it be referred to James Parsons, Esq., as master to settle and report such respective amounts.