CHARLES DUVALL, *vs.* SAMUEL PEACH.—*December* 1843.

At a sale of land under execution, P agreed with D, that if D would pur-
chase the land, he the said P, would invalidate certain deeds therefor, and
put him in possession. HELD: that this agreement being merely by parol,
is void at law under the statute of frauds.

P, at a public sale of lands, the bidding being dull, said, buy the land gentle-
men; buy the land D; I will burst the deeds from N; I will give you a

good title; and will put you in possession of the land; it shall not cost you a cent. Under such representations, D bought the land and paid for it in 1826. In an action brought in 1840, by D against P, to recover back the purchase money upon the ground that P had failed to vacate the incumbrances and put D in possession, there being no proof of any proceedings on the part of P, nor that he had given possession. HELD: that the action was barred by limitations.

To remove the bar raised by the statute of limitations, there must be such an acknowledgment of a subsisting debt, as is equivalent to an express or implied assumpsit, or promise to pay.

Where a record of proceedings in Chancery does not appear in the bill of exceptions, this court cannot decide whether the county court erred in rejecting it as evidence or not.

A party in a cause cannot prove by a solicitor in Chancery, that in the opinion of such solicitor, judging by an examination of certain proceedings in that court to vacate conveyances, (without producing the record,) that he had used reasonable diligence to accomplish the object of such proceedings.

Parol proof of facts of which the plaintiff had record evidence cannot be given; it is not the best evidence in legal contemplation.

APPEAL from *Prince George's* County Court.

This was an action of *Assumpsit*, brought on the 24th March 1840, by the appellant against the appellee.

The plaintiff declared, that whereas, the said *Samuel*, on the 4th December 1826, at, &c., issued a certain writ of *venditioni exponas*, upon a judgment obtained by him, the said *Samuel*, at, &c., against a certain *Nathan Waters*, for the recovery of a large sum of money, to wit, &c., and placed the same in the hands of *George Semmes*, esquire, the then sheriff of said county, directing him thereby to expose to public sale, for the purpose of satisfying said debt and costs, all those tracts or parts of tracts or parcels of land which had theretofore been levied upon, under a certain writ of *fieri facias*, which the said *Samuel* had caused to be issued out of said court, on, &c., at, &c., to wit, one tract of land called *Pasture Enlarged*, &c., &c., all of which said tracts or parts of tracts or parcels of land, were by virtue of said writ of *venditioni exponas*, afterwards, to wit, on the 30th December 1826, at *Prince George's* county aforesaid, by the sheriff aforesaid, exposed to public sale, to the highest bidder; at which said sale, the said *Charles*, then and there became the purchaser, upon the ex-

press promise and undertaking of him, the said *Samuel*, that if he, the said *Charles*, would purchase the said lands as aforesaid, he, the said *Samuel*, would invalidate the deeds for said lands, which had been before that time executed by the said *Nathan*, to a certain *Nathan J. Waters*, and a certain *Samuel Radcliffe*, under which the said *Nathan J.* and *Samuel Radcliffe*, claimed to hold the same as their property, and would put the said *Charles* in possession of said lands, so as aforesaid purchased by him; and the said *Charles* in fact saith, that the said *Charles*, confiding in the promise and agreement of the said *Samuel*, so as aforesaid, then and there made, then and there became the purchaser of the said tracts, parts of tracts or parcels of land; for a large sum of money, to wit, thirteen hundred and fifty dollars, current money, which said sum of money, the said *Charles*, on the aforesaid 30th day of December 1826, paid to a certain *Richard Peach*, the agent and attorney for the said *Samuel Peach*. But the said *Samuel*, not regarding or fulfilling his said contract or agreement, by vacating or annulling the said deeds, or either of them, and hath not yet put the said *Charles* in possession of the said lands, so as aforesaid purchased by him, or any part thereof, but to perform his said contract or agreement in that respect, he hath hitherto altogether refused, and still doth refuse to perform the same.

2ND COUNT. And whereas also, the said defendant, heretofore, to wit, on the 30th December 1826, did encourage and persuade the said plaintiff to buy at the sheriff's sale in the first count mentioned, the tracts, parts of tracts and parcels of land also therein mentioned, and in consideration that the plaintiff would purchase the said lands at the said sale, the said defendant undertook and faithfully promised the plaintiff, that the said lands were the proper lands of *Nathan Waters*, also therein mentioned, and warranted the said lands to belong to the said *Nathan Waters*, and undertook and promised, that he, the said defendant, would set aside, invalidate and annul certain deeds for the same, also in the first count mentioned, and put said plaintiff in possession thereof, and give him a good

title thereto, without any cost or charge to him, and by means and in consequence of the said promises and undertakings, and warranty, and relying on, and confiding in the same, the said plaintiff became the purchaser of the said lands, at the said sale, at a large price, to wit, $1,350, which he then and there paid to the authorised agent and attorney of the said defendant; whereas, the said lands in truth and fact did not belong to the said *Nathan Waters,* but to the said *Nathan J. Waters,* and *Samuel Radcliffe;* and the said *Nathan J.* and *Samuel,* were afterwards, to wit, on the day and year aforesaid, at the county aforesaid, impleaded by the said plaintiff, with the knowledge, consent and approbation of defendant, in the High Court of Chancery, for trying the title to said lands, and to put the plaintiff in possession thereof, in pursuance of said undertakings and promise, and warranty, and the said cause was so proceeded in, that afterwards, at the December term 1839, of the Court of Appeals for the Western Shore of Maryland, (to which court said cause was carried on appeal,) upon a final hearing and decision of said cause upon the merits thereof, the said deeds were not vacated, annulled and invalidated, but the proceedings instituted for that purpose were decreed to be dismissed, and in the prosecution of said cause in the Court of Chancery, and in the Court of Appeals, the said plaintiff has expended a large sum of money, to wit, two thousand dollars, and the said deeds have not, nor have any of them been set aside, invalidated or annulled, nor has a good title thereto been made to the plaintiff by the defendant, or any other person, by reason whereof the said plaintiff has lost the said sum of $1,350, so paid as aforesaid, for the said lands, and the further sum of $2,000, expended as aforesaid in trying the title to said lands, and is otherwise prejudiced and injured, and has damage to the value of $5,000, and therefore sues, &c.

3RD COUNT. And whereas also, the said *Samuel,* afterwards, that is to say, on the 20th of March 1840, at the county aforesaid, was indebted to the said *Charles,* in another sum of $1,350, current money, for the like sum of money by the said *Samuel,* before that time had and received, to and for the use

of the said *Charles*, and also, for a like sum of money, before that time lent and advanced to, and paid, laid out and expended, by the said plaintiff, for the said defendant, and at his special instance and request, and being so indebted, he, the said *Samuel*, in consideration thereof, afterwards, that is to say, on the day and year last aforesaid, at the county aforesaid, undertook, and then and there faithfully promised to the said *Charles*, to pay him the said mentioned sums of money, when he should be thereto afterwards requested.   Nevertheless, &c.

The defendant pleaded non-assumpsit and limitations, on which issues were joined.

1ST EXCEPTION. At the trial of this cause the plaintiff to maintain the issue on his part joined, proved to the jury, that at the April term 1824 of *Prince George's* county court, *Samuel Peach*, the defendant in this cause, recovered a judgment against a certain *Nathan Waters* and the other parties to it, upon a bond given to him as trustee.

SAMUEL PEACH *vs.* NATHAN WATERS.   April 12th, judgment for $14,485, debt and costs, to be released on payment of $7,247.87½, with interest from 21st September 1811, till paid, and costs.   Cr. By $1,400, 29th March 1822.   By $1,105.89, 3rd April 1824.

And that process of execution issued from said court for the purpose of making the money due on said judgment, which came to the hands of the sheriff of *Prince George's* county, and was levied upon certain lands as the property of the said *Nathan Waters;* and the plaintiff proved by *Richard W. Isaac*, a competent witness, that he was deputy sheriff, and charged with the execution of said process, and caused the said lands to be advertised for sale on the 30th day of December 1826; that on the day before the said sale was to take place, witness went to the defendant to know whether it would be necessary for him the witness to attend the said sale, and whether he the defendant would attend; that the defendant informed witness that he would not attend the sale, but his brother *Richard Peach*, would come from *Annapolis* and attend the sale for him the defendant, and that he the defendant had fully authorised his

said brother to settle the business, and that he would be satis-
fied with whatever settlement his brother made in relation to
the business. On the day of the sale *Richard Peach,* who was
proved to be the attorney for defendant, and who obtained the
judgment, was present, and the bidding being dull, he said,
"buy the land gentlemen;" "buy the land doctor," (speaking
to the plaintiff,) "I will burst the deeds from *Nathan Waters* to
"*Nathan J. Waters* and *Samuel Radcliffe;* I will give you a
"good title, and I will put you in possession of the land, and
it shall not cost you a cent." And plaintiff became the pur-
chaser of said lands for the sum of $1,350. And witness fur-
ther stated, that he did not receive any part of the purchase
money, but that the said *Richard Peach,* as attorney, gave him
a receipt on the day of sale in satisfaction of the said execu-
tion, stating at the same time, that he and the purchaser would
settle about the purchase money among themselves. Witness
further proved, that he called on defendant some time in the
year 1827 or 1828, in relation to the payment of the poundage
fee due on said execution, when defendant informed him, that
the purchase money for said lands had been paid, and the land
settled for. Witness further stated, that he called on defendant
the day before said sale as above stated, because he believed
there would be no sale of said property, unless the said defen-
dant attended at said sale. No person had bid for the land,
until the said *Richard Peach* had made the above declarations,
and shortly after they were made, the said lands were knocked
off to the said *Charles Duvall,* as the highest bidder. And the
plaintiff further proved by competent testimony, that the de-
fendant in this cause was examined under oath, in virtue of a
commission issued in 1837, from the Court of Chancery, in a
cause wherein the plaintiff in this case was complainant, and
*Nathan Waters* and others were defendants, instituted by the
plaintiff, for the purpose of vacating the deeds heretofore re-
ferred to, and upon said examination, and in conversations
with the witness, defendant stated, that he was satisfied with
the application of the purchase money by said *R. Peach,* and

23      v. 1

the said witness upon cross examination stated, that in said conversations, he understood defendant to say, that his brother *Richard Peach*, had acted as his attorney. The said deputy sheriff also proved on cross examination, that on the day of sale, *R. Peach* did not represent himself as the agent of the said defendant, and that he did not hear the defendant's name mentioned on that day.

The defendant thereupon prayed the court to give the jury the following instructions :

1. That *Richard Peach*, as the mere attorney of *Samuel Peach*, had no authority to make the contract declared on in this cause.

2. That if the jury shall believe from the evidence, that *Richard Peach* did enter into the agreement mentioned in the declaration, that said agreement is not binding on *Samuel Peach*, unless the jury shall further find from the evidence, that *Richard Peach* was authorised by *Samuel Peach*, to make as his agent such a contract, and that he did, in pursuance of such authority, actually make the contract as the agent of the defendant.

3. That the alleged contract being a contract concerning lands, would not be binding on *Samuel Peach*, unless it was reduced to writing, and signed by *Samuel Peach*, or by some agent thereunto by him lawfully authorised.

4. That the said contract was not, in the contemplation of the parties, to be completed within one year from the date thereof; then that the same was void, unless reduced to writing, and signed by *Samuel Peach*, or his lawfully authorised agent.

The court (STEPHEN, C. J. and KEY, A. J.) granted the first, second and third prayers, but refused to grant the fourth prayer. The plaintiff excepted to the instructions granted.

2ND EXCEPTION. Upon the evidence contained in the preceding bill of exceptions, which is to be considered as part of this exception, the plaintiff prayed the court to instruct the jury, that if they should find from the evidence, that there was an agreement between the plaintiff and *Richard Peach*, as the authorised agent of the defendant, and in virtue of said agree-

ment the plaintiff purchased the land, as stated in the preceding exception, and paid the purchase money to the said defendant or his agent, and that the said agreement had not been complied with on the part of the defendant, that the plaintiff is entitled to recover upon the count for money had and received, although they should find that the said agreement was not in writing, and signed by the defendant, or some person by him fully authorised; which instruction the court gave.   The defendant by his counsel, thereupon prayed the court to instruct the jury, that if they should find from the evidence, that the agreement was made, and the purchase money paid on the 30th December 1826, and that the original writ in this cause did not issue until the 1st day of March 1840, that then the action is barred by limitations, unless they should find some subsequent assumption or promise by the defendant, either to repay the money or perform the said contract, and they must find for the defendant; which prayer the court granted, and gave the instruction accordingly.   The plaintiff excepted.

3RD EXCEPTION.  In addition to the testimony contained in the preceding bills of exceptions, and which is to be considered as part of this bill of exceptions, the plaintiff, for the purpose of removing the bar of the statute of limitations, offered to prove by *Thomas F. Bowie*, esquire, an attorney and counsellor at law and solicitor in chancery, a competent witness in this cause, that he is acquainted and familiar with the practice and course of proceedings in courts of law and chancery in *Maryland*, and that he has examined certain records of proceedings instituted in *Prince George's* county court, the Court of Appeals, and the Court of Chancery, by the plaintiff in this action, first, for the purpose of getting possession of the lands mentioned and referred to in the preceding evidence, and afterwards, for the purpose of vacating and annulling certain deeds for the said lands from *Nathan Waters* to *Nathan J. Waters*, and *Samuel Radcliffe*, and that he was solicitor for said *Duvall* in said cause and proceedings from the year 1835 to 1839, and that from the knowledge of the course and manner of said proceedings in the said county court, Court of Chancery, and

the Court of Appeals, and in his opinion, judging by his examination of the said proceedings instituted and conducted by the plaintiff as aforesaid, the said plaintiff had used reasonable diligence in his efforts to acquire possession of the said lands under the said purchase and agreement, and to set aside and vacate said deeds, and procure a good title to the same. And the plaintiff further offered to prove by the said witness, that the said proceedings were first commenced by the said *Duvall*, the plaintiff in this case, in the year 1827, or 1828, or 1829, as he knows by inspection of the record, and were continued by him in the county court, Court of Chancery, and Court of Appeals, continuously down to the year 1839. And the said plaintiff also offered in evidence, a duly authenticated record of the proceedings in the Court of Appeals, on an appeal from Chancery, wherein the said *Charles Duvall* was complainant, and the said *Nathan Waters* and others were defendants, in which cause the validity of said deeds had been in issue in the said courts between the present plaintiff claiming under the sheriff's sale and agreement aforesaid, and those claiming title to the said lands under the aforesaid deeds, for the purpose of shewing when said proceedings commenced and ended, and that the issues involved in the cause embraced the validity of said deeds. But the defendant, by his counsel, objected to the admissibility of the said evidence, which objection the court sustained, and refused to permit any of the said evidence to go to the jury. The plaintiff excepted.

The verdict and judgment being against the plaintiff, he prosecuted this appeal.

The cause was argued before ARCHER, DORSEY, and SPENCE, J.

By DIGGES and TUCK for the appellants, and
By PRATT and C. C. MAGRUDER for the appellee.

SPENCE, J., delivered the opinion of this court.

After a careful examination of the several legal propositions decided by the county court and brought up to this court for revision, we are prepared to say, that in them we find no error.

The first and second propositions under the first bill of exceptions appear to us so manifestly clear, that we find great difficulty in suggesting arguments or reasons which will render their correctness more conclusive.

The third proposition arising under the first bill of exceptions, raises the question, whether the agreement set out in the declaration and relied on by the plaintiff, is such an agreement as is within the statute of frauds. The parol agreement, or rather that part of the agreement relied on, to charge the defendant as set out in the plaintiff's declaration, is as follows, viz: "At which said sale, the said *Charles* then and there became the purchaser, upon the express promise and undertaking of him the said *Samuel*, that if he the said *Charles* would purchase the lands as aforesaid, he the said *Samuel* would invalidate the deed for said lands, which had been before that time executed by the said *Nathan* to a certain *Nathan J. Waters* and a certain *Samuel Radcliffe*, under which the said *Nathan J.* and *Samuel Radcliffe* claimed to hold the same as their property, and would put the said *Charles* in possession of said lands so as aforesaid purchased by him; that the said *Charles* confiding in the promise and agreement of the said *Samuel*, so as aforesaid, then and there made, then and there became the purchaser, &c."

We are fully persuaded that this agreement falls entirely within that class of cases which the authorities determine to be agreements within the statute of frauds, and in principle almost identical with *Lamborn vs. Watson*, 6 *H. & J.* 252.

The second exception presented a question under the statute of limitations. The court instructed the jury, "that if they should find from the evidence that the agreement was made and the purchase money paid on the 30th December 1826, and that the original writ in this cause did not issue until the 1st day of March 1840, that then this action was barred by limitations, unless they should find some subsequent assumption or promise by the defendant, either to re-pay the money or perform the said contract." In *Maryland*, to remove the bar raised by the statute of limitations, there must be such an

acknowledgment of a subsisting debt, as is equivalent to an express or implied assumpsit or promise to pay.

This court cannot decide whether the county court erred in refusing to let the record of the proceedings in the Court of Appeals, on an appeal from Chancery, wherein *Charles Duvall* was complainant and *Nathan Waters* and others were defendants, go to the jury, because that record is not made a part of the third bill of exceptions, nor is it in the record; but we think the county court did not err in refusing to let the testimony of *Thomas F. Bowie* go to the jury, because that was parol evidence of facts of which the plaintiff had record evidence, and therefore was not the best evidence in legal contemplation.                    JUDGMENT AFFIRMED.