JOHN LAMM, JR. *vs.* THE PORT DEPOSIT HOMESTEAD ASSOCIATION OF CECIL COUNTY.

*Statute of Frauds—Sale—When Fraudulent representations constitute a cause of Action and ground for the refusal by a Court of Equity to ratify a sale—Liability of Principal and Agent for the False representations of the Agent—What constitutes the ground of Action for False representations—Liability of Private corporations for the wrongful acts of its Agents—Liability of a Principal for the wrongful acts of his Agent in the Course of his employment—Caveat emptor—Extent of the powers of an Agent conducting a Sale of Mortgaged property under an Appointment from the Mortgagee.*

The fourth section of the Statute of Frauds refers by its terms and meaning to contracts for the sale of lands, &c., or any interest in or concerning them, and not to collateral or independent undertakings outside of such contracts.

If representations are fraudulently made to induce a purchaser to buy, and he is induced thereby to purchase and sustains damage, he will be entitled to recover for the tort, fraud or deceit; and besides, the fraud would constitute ground for a Court of equity to refuse to ratify the sale.

False representations made by an agent authorized by his principal to make them, render both principal and agent liable.

A representation false in fact, if innocently made by a party, believing in the truth of what he asserts, will afford no ground of action; the concurrence of fraudulent intent and false representation, and damage resulting therefrom, constitute the ground of action.

Natural persons are liable for the wrongful acts and neglects of their servants done in the course of their employment; and private corporations, upon the same grounds of public policy, are amenable to the same extent.

An agent's authority must be measured by the extent of his employment, and his principal is liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences, and omissions of duty of his agent, *in the course of his employment.*

Lamm *vs.* Port Deposit Homestead Association, &c.

The rule of *caveat emptor*, applying to sales made by trustees, does not shield a party rendering himself liable to an action for fraud and deceit perpetrated at a sale thus made.

The powers of an agent conducting a sale of mortgaged property, under an appointment from the mortgagee, must be found in the mortgage authorizing the sale; and any representations or agreements made by such an agent beyond the powers contained in the mortgage authorizing the sale, do not bind the mortgagee.

APPEAL from the Circuit Court for Cecil County.

On the 12th of September, 1874, the Port Deposit Homestead Association of Cecil County, under a power of sale in a mortgage to it from a certain Silas Gorrell and wife, offered for sale in Port Deposit a certain house and lot, the sale being made for the Association by Wm. J. Jones, its attorney, in pursuance of an order of said Association, passed July 6th, 1874, whereby the said attorney was authorized "to make sales of property required to be sold for forfeiture of covenants in mortgages, and to do all things about said sales as fully as if done by this corporation." It was in evidence that the appellant inquired of said Jones at the time of the bidding at the sale, "who would deliver the property to the purchaser, and when?" and that having received the answer "we will deliver possession within three months from the day of sale," continued bidding and the property was struck off to him; that he did not obtain possession of the property until February, 1876, and then only under a writ of *habere facias.* It was testified by Mr. Jones that he would not undertake to state with verbal accuracy the answer he made; that he might have said "you can get possession in about three months," or "I can get possession for you in about three months;" but that he was confident that he never made any promise to, or contract with, the appellant, that he the witness or the appellee, would put the appellant in possession in three months or in any time;

that he could not have made such promise or contract, for he knew he had no power to put the owner of the property out of possession. This action was brought to recover damages for the expenses incurred in obtaining possession of the property, and the loss of the intermediate rents and profits. The appellant testified that the house was a double one, and that after he obtained possession, he collected from the person who occupied one-half of the house full rent for such half from the day of sale ; but that the person who occupied the other half had paid him nothing.

*Exception.*—At the trial below the defendant asked the following instruction :

That although the jury believe from the evidence that William J. Jones stated at the sale in Port Deposit, that the defendant, or that he, as its agent, would put the purchaser of the property into possession within three months from the day of sale, that said agreement would not be binding on the defendant, and the plaintiff cannot recover.

1st. Because the agreement was not reduced to writing and signed by the defendant, or its duly constituted attorney.

2nd. Because there is no evidence that William J. Jones was authorized by the defendant to make as its agent such a contract.

The Court (WICKES and STUMP, J.,) gave the instruction.

The plaintiff excepted and the verdict and judgment being against him he appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, ALVEY and ROBINSON, J.

*Alexander B. Hagner*, for the appellant.

Under the instruction of the Court below, the jury rendered a verdict for the appellee. This instruction it is respectfully submitted was erroneous.

The first ground upon which the Court's ruling was based, involves the construction of the fourth paragraph of

section 4, of the Statute of Frauds, and this we insist gives no support to the proposition under consideration.

It is quite clear that the words " contract *or sale*," &c., means " contract *for the sale of*," &c. (*Browne on Frauds, sec.* 263.) So that applying the general language of the section with this substitution, to the words of the fourth paragraph, it would read thus, " no action shall be brought, whereby to charge any person upon any contract for the sale of lands, tenements or hereditaments, or any interest in or concerning them, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed," &c., &c.

The contract which is required to be in writing is one *for the sale* of lands, &c , or *for the sale of* any interest in or concerning lands, &c. A contract " *concerning* lands," &c., is not within the Statute, unless it is also a contract "*for the sale* of an interest *concerning lands.*" (*Browne on Frauds, sec.* 268.) In must be a contract which goes *to take from the promisor* the land or some interest in the land. (*Browne on Frauds, sec.* 233.)

It seems obvious that the present suit is not brought upon an agreement concerning *the sale* of lands, or concerning *the sale* of any interest in lands.

The contract *concerning the sale of the interest* in the lands was in writing, and has been fully executed. The purchaser has performed his part of *that* written contract, by paying the money, and the appellee has performed his part of the *same* contract by conveying to the purchaser " all the title which the mortgagor had in the mortgaged premises at the time of recording the mortgage ; " (*Code, Art.* 64, *sec.* 10 ;) and with *that* contract we have nothing more to do. But the agreement upon which the plaintiff sued is quite a different contract from the contract of sale, although consistent with it and capable of being established by parol. *McCreary vs. McCreary,* 5 *G. & J.,* 156.

It is *collateral* to the written contract; and was in effect simply an agreement that the mortgagee would assume the expenses of ejecting the mortgagor whose *entire title* was to be sold. From the moment of the sale he became a mere trespasser, liable to be ejected by the purchaser, and the seller only agreed to assume the expense and trouble of compelling him to vacate, without cost to the purchaser, within a designated time. Of course in the event that the appellee should find it impossible to procure his removal, within the designated time, it became bound to respond in damages for the breach of the agreement.

The sale in this case, made under a power in a mortgage, and reported to the equity Court, was a *judicial sale*, and is not within the fourth section of the Statute of Frauds. *Warfield vs. Dorsey*, 39 *Md.*, 299.

Therefore the appellant could not have escaped from his responsibility as purchaser, upon the pretext he had not signed a written contract; nor on the other hand would the vendor, the agent of a Court of equity, be allowed to repudiate any of the stipulations of his agreement of sale, because he had not signed a memorandum in writing, setting them forth. No such writing or signature is requisite to bind the one or the other; the only question being, *what was the agreement?* and the concession of the prayer is that the agreement was made as charged, though by parol.

The second ground for the instruction is, that there was *no* evidence that Mr. Jones was authorized by the defendant to make the contract.

If there was " *any* evidence in the case, from which a rational mind could draw the conclusion," the reason was erroneous. Can it be said that there was a *total failure* of evidence upon the point? It is not necessary that the *agency* should be constituted *in writing*. He might equally be empowered by parol. *Baker vs. Wainwright*, 36 *Md.*, 348.

And the evidence of all the plaintiff's witnesses might, for aught the Court could tell, convince the jury, despite the disclaimer of Mr. Jones, that he was empowered to make the agreement as agent of the appellee. Mr. Jones' own evidence seems to indicate that he considered there was an obligation upon the appellee to file the application and obtain the *habere* without charge to the appellant, which tends to support our theory.

The alternative supposition of the prayer is, that Mr. Jones stated that he was the agent, and as such claimed the authority to make the agreement, and the presumption surely is, that agents do not exceed their authority. *Conner vs. Pendleton*, 8 *Md.*, 337; *Gaither vs. Myrick*, 9 *Md.*, 118.

If Mr. Jones were claiming to act as "*attorney*" in making the sale, then the "order" authorizing him "to do all things about the sale, *as fully as if done by the corporation*," would seem to give powers sufficiently extensive to embrace an engagement to assume the expense and trouble of removing the intruder from the house. No one could doubt that the Homestead Association was competent to make such an agreement, and under the "order" or power of attorney, Mr. Jones had power to do everything about the sale that the Association could have done.

But the Court will observe, that Mr. Jones was not "*named*" in the mortgage as "attorney," and therefore he had no power to act as "attorney" *under the power*.

The sale therefore was made by the *mortgagee*, the Homestead Association; and whatever was done by Mr. Jones in their behalf, was done by the *Association itself*, and not by Mr. Jones as "*attorney*" under the power. The sale was not made by Mr. Jones as "attorney" under the mortgage, but by the mortgagee through their *agent Mr. Jones*.

As the Association is a corporation, it must act by agents who can talk. But all that these agents say or promise, is

said or promised *by the Association*, because it is *the Association itself* that speaks. Therefore what was agreed as to putting the purchaser into possession, was agreed by the *Association itself*, through its agent. The Association made the agreement, not Mr. Jones, as "attorney."

If either of the grounds upon which the instruction is based be erroneous, the Court will reverse ; and we respectfully insist that the Court would be promoting the ends of justice by allowing a recovery for admitted injuries where the only defence is purely technical.

*Alexander Evans* and *Wm J. Jones*, for the appellee.

STEWART, J., delivered the opinion of the Court.

The appellant alleges as the ground of his complaint, that the agent of the appellee, at a public sale of the house and lot, made by the said agent, on account of the default of payment of a mortgage thereon, held by the appellee, represented, upon enquiry being made of him, by the appellant, that possession of the property would be given to the purchaser, within three months from the day of sale.

That confiding in this representation, he was induced to bid for the property, and became the purchaser thereof.

Possession not having been given him according to the representation, and having lost the rents thereof in the meantime, and incurred expense in obtaining possession, this action was brought to recover damages for the same.

At the trial the appellee asked to have the jury instructed substantially, that such representation was not binding on it, and the appellant could not recover thereon.

1st. Because the agreement was not reduced to writing and signed by the defendant or its duly constituted attorney.

2nd. Because there is no evidence that the agent was authorized by the appellee to make such contract.

The Circuit Court granted this prayer, and the question is, was any error committed thereby?

The fourth section of the Statute of Frauds refers by its terms and meaning to contracts for the sale of lands, &c., or any interest in or concerning them, and not to collateral or independent undertakings outside of such contracts, and does not apply to the representation, if any, made at the sale in question.

It was but the assertion of the agent at the time of the contract for the sale of the land, in relation to a different proposition, and formed no integral part of said contract, and its non-performance would not necessarily break up the contract for the sale of the land, unless it might so operate by reason of any fraud connected with the sale, which would stand on different ground.

If the representation were made fraudulently to induce the purchaser to bid for the property, and he was induced thereby to buy the same and sustained damage, he would be entitled to recover for the tort, fraud or deceit. Besides, the fraud would constitute ground for the Court of equity to refuse to ratify the sale.

The agent, and principal if it authorized the representation to be made, would both be answerable.

The cases of *Lamborn vs. Watson*, 6 *H. & J.*, 252, and *Duvall vs. Peach*, 1 *Gill*, 172, relied upon by the appellee, recognize this distinction. See also *Benjamin on Sales*, 419.

Although the representation might be false in fact, if innocently made by the agent, believing in the truth of what he asserted, it would afford no ground of action.

To constitute the fraud and deceit, the representation must be false and knowingly made.

The concurrence and fraudulent intent and false representation, and damage resulting therefrom, constitute the ground of action. *Benjamin on Sales*, 338.

What constitutes fraud cannot be precisely defined. Every kind of artifice employed by one person to deceive

another, if he is deceived thereby, however false and dishonest, and made to deceive, will not constitute a fraud, supporting the right of action, if the other party knows they are false, discovers them and is aware of the truth.

In such case the other party is not deceived by them, and if he makes his contract notwithstanding, he has no right to rescind it on that account, and cannot recover in an action for tort or in the nature of deceit. See *Benjamin on Sales,* 314, 315.

The responsibility of the appellee as a corporation for the acts of its agent, is just the same as that of any other person.

Natural persons are liable for the wrongful acts and neglects of their servants or agents, done in the course of their employment, and private corporations upon the same grounds of public policy are amenable to the same extent.

The person, natural or artificial, in such case is liable, whether the act of the agent enures to his or its benefit or not, because an innocent person has been deceived, and damaged by confiding in the agent, accredited by the principal as worthy of trust *in that particular business,* whether the principal intended to authorize the acts or not, or forbade them, or disapproved of them, is immaterial.

The rule *respondeat superior* founded on principles of public policy governs in such case, because when one of two innocent persons must suffer by the hand of another, he who enabled him to commit the same, by giving him the credit, must be the sufferer.

But the agent's authority *must be measured by the extent of his employment,* and the principal is liable to third persons in a civil suit, for the frauds, deceits, concealments, misrepresentations, torts, negligences and omissions of duty of his agent, *in the course of his* employment.

These principles are fully established, and are clearly and distinctly stated in the case of *Tome vs. Parkersburg Branch R. R. Co.,* 39 *Md.,* 44.

The rule of *caveat emptor* applying to sales made by trustees, *Anderson vs. Foulke,* 2 *H. & G.*, 346, and *Neel vs. Hughes,* 10 *G. & J.*, 7, does not shield a party rendering himself liable to an action for fraud and deceit, perpetrated at a sale thus made.

But here the sale was made to foreclose a mortgage, which contained a power of sale in case of default.

Although Jones was not mentioned in the mortgage as the attorney to make the sale, but was acting under the appointment of the appellee, his powers in making the sale must be found in the mortgage authorizing the sale.

That marks out and distinctly furnishes the authority, when he is duly appointed by the mortgagee. Any sale made by him is subject to the ratification of the Court, and if any fraudulent or improper representations are made by the attorney or trustee, they would afford ground for refusal to ratify the sale.

So far as the appellee is concerned, and his power as its agent, he must be treated as confined to the line of duty, prescribed by the mortgage, and the law applicable to any sale made by him.

No power was conferred upon him to make such representations as alleged.

If made, they were outside of the scope of his employment, and the appellee is not bound thereby.

It follows that although the first reason given for the granting of the prayer, is not tenable, the appellant incurred no injury thereby, as the appellee was not bound by the representations of the agent if made as alleged.

*Judgment affirmed.*