WILLIS PHELPS and JOHN W. PHELPS, trading as PHELPS & COMPANY *vs*. THE GEORGE'S CREEK and CUMBERLAND RAILROAD COMPANY.

*Admissibility of the declarations of an agent—Remote and Contingent damages—Irrelevant evidence— Where a party charged with Misrepresentation may testify that he Acted in good faith—His credibility a question for the Jury—Admission of a Letter in Evidence—The fact of its Receipt a question for the Jury—Facts from which its Receipt may be inferred.*

Where one of the parties to a contract is sued by the other party, for misrepresentations, by which the latter claims to have been deceived in making the contract, the declarations of an agent, made subsequent to the negotiations which culminated in the contract, are inadmissible.

The plaintiffs contracted with the defendant, (a railroad company,) to construct its railroad for a fixed sum. While the plaintiffs were waiting for the defendant to procure a part of the right of way, which they claimed was represented by the president of the defendant to be already secured, the price of rails took a sudden rise in the market, so that the plaintiffs were obliged to pay more for them, when they concluded to purchase, than they could have gotten them for had the work not been delayed. In an action for deceit brought by the plaintiffs against the defendant, it was HELD:

1st. That the loss thus sustained by the plaintiffs was a damage too uncertain, remote and contingent to constitute a ground of recovery.

2nd. That representations offered in evidence by the plaintiffs, in regard to the capacity of the chief engineer of the defendant, and the correctness of his estimates, made by the president of the defendant, to other proposed contractors for the same work, and not communicated to the plaintiffs, or having any influence in inducing them to enter into their contract, were inadmissible.

3rd. That the president and chief engineer of the defendant were competent to testify, on behalf of the defendant, the former that whatever representations he had made to the plaintiffs were made

Phelps *vs.* George's Creek & Cumb. R. R. Co.

in good faith, and from the best information he had, and the latter that he had made up the estimates in good faith, and with no intention to defraud the plaintiffs.

4th. That it was for the jury, looking to all the evidence in the cause, to determine what credit was to be given to their testimony on this point.

5th. That a letter in reply to a previous letter from one of the plaintiffs, setting forth the nature of their complaint at that time, and put in evidence by them, was properly admitted in evidence on the offer of the defendant, to show the position of the defendant, communicated by it to the plaintiffs, as taken in regard to their complaints as then made; and was proper to be considered by the jury also in connection with the fact that for some twelve months thereafter the plaintiffs continued to prosecute the work under their contract, and the modifications from time to time made therein.

6th. That whether or not this letter was actually received by the plaintiffs, was a fact for the jury to find, notwithstanding the plaintiffs denied that they had gotten a reply.

7th. That it was competent for the jury to infer its receipt from the subsequent conduct and relations of the parties, as well as from the statement of the witness that it had been sent.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

*First, sixth,* and *eighth exceptions,* abandoned.

*Second and tenth exceptions* sufficiently stated in the opinion of the Court.

*Third* and *fourth exceptions* taken to the rejection of proof offered by the plaintiffs, the nature of which is stated in the opinion of the Court.

*Fifth* and *ninth exceptions* taken to the admission of proof offered by the defendant, the nature of which is stated in the opinion of the Court.

*Seventh Exception.*—The plaintiffs as part of their proof offered in evidence the following letter, to which the writer testified that he never received any reply:

"Springfield, Feb'y 18th, 1880.

"To Henry Loveridge, Esq.,

"President George's Creek and Cumberland R. R. Co.

"*Dear Sir:*—On account of the long delay of the company in furnishing the right of way and lands for the R. R., which I and my son agreed to build for your company, I shall not be able to complete the road by the 1st of March next, and I have thought it only right I should notify you as president of the company about it.

"Since the suits have been ended about the right of way, I have gone on with the work of building the road, and will go on as fast as I can reasonably, but it will take some time beyond the 1st of March to complete it. It has been a great delay and loss to me in not having the right of way and lands upon which the road was to be built furnished as we agreed in the contract, immediately after the contract was signed, as the title to the lands and right of way to a considerable portion of the line was involved in a lawsuit, and it was uncertain whether, or not, you would ever get the title. I did not feel safe in going ahead and making too great an expenditure until this question was settled, particularly, as I was to take two-thirds of my pay in bonds on the road, and the bonds would have been worthless nearly, if you didn't get the right of way for the whole line until this was settled, and you were able to turn over to me a clear right of way as the contract called for. I didn't feel safe in buying the rails and iron for the road, and this delay will be a great loss to me, as the rails have nearly doubled since last June. I think the company ought to take this into consideration and do what is fair with me about it, and stand their share of this loss. I will try and see you in a few days, and talk all this over with you. I only want what is right and fair in the whole matter.

"Sig'd, Yours,

"Willis Phelps."

Subsequently, as part of its proof the defendant offered in evidence the following letter :

"OFFICE OF THE
"GEORGE'S CREEK AND CUMBERLAND R. R. Co.,
"*New York*, March 2nd, 1880.
"Messrs. WILLIS PHELPS AND JOHN W. PHELPS,

"*Dear Sirs:*—Referring to the recent interview of Mr. Willis Phelps, with Treasurer Lloyd and ourselves, we beg to say, that upon a full consideration of the subject, we are unable to perceive why your engagements under the contract for the building of our road, &c., should not be carried out in good faith and in all its details, except as to the time of the completion of the work. In this respect we shall cheerfully make such further allowance of time as may be reasonably expected by reason of the failure of our first efforts to acquire possession of certain portions of the right of way, and will be pleased to confer and agree with you as to what extensions of time is required or should be made.

"We are satisfied, that the provision of ballast as called for in our contract, is of great importance and necessity to our work, in view of the character of the traffic it will be required to sustain. Mr. John W. Phelps agreed with us some months ago, that the size of the ballast should be such, as would pass through a four inch ring for the bottom ballast, and such as would pass through a two inch ring for the top dressing and for distribution between the ties. A neglect of this preparation of the road-bed would expose the company to a heavily increased cost of maintaining the track in proper condition. The substitution of iron rails for steel upon the sidings of the road, would be satisfactory to us upon reasonable conditions, which we would be pleased to consider with you, but in the event of such substitution, we would require the iron rail to be of the same section as that of the steel rail used in the main track, and of which you have been furnished a pattern.

540 MARYLAND REPORTS.

Phelps *vs.* George's Creek & Cumb. R. R. Co.

"We sincerely trust, that you will be enabled to secure the rails for prompt delivery, in order that the whole work may be completed according to the spirit of our agreement with the least possible delay. We urge this from the stand-point of your own interest, not only in reference to the obligations arising from your contract with us, but with a desire also to avoid the consequence of a failure on our part to furnish transportation according to our own contracts with other parties, who will, in that event, be exposed to large losses or damages, for which we shall doubtless be held liable.

"You have cheerfully and properly recognized the fact, that you alone are responsible for the failure to buy rails for our road at a time when the condition and prices of the market were highly favorable to your interests, and you will certainly, not seriously expect us to assume any of the consequences arising from the exercise of your own judgment in the premises, and against our own frequently and earnestly expressed views upon the subject. Trusting that these expressions will be satisfactory, and command your approval, we are—

"Yours, resp'y and truly,

"HENRY LOVERIDGE,

"Pres."

To the reading of this letter the plaintiffs objected. The Court (ALVEY and MOTTER, J.) overruled the objection. The plaintiffs excepted.

*Eleventh Exception.*—The plaintiffs offered seven prayers, which are omitted, as the grounds for their rejection sufficiently appear in the opinion of the Court. The defendant offered ten prayers, of which the third and eighth are omitted, the same having been rejected. The others are as follows:

1. In order to enable the plaintiffs to recover, they must establish to the satisfaction of the jury, that the defendant

APRIL TERM, 1883. 541

Phelps *vs.* George's Creek & Cumb. R. R. Co.

by its agents, in the exercise of their employment, made the representations complained of in plaintiffs' declaration; that the representations were false; that the defendant by its agents so making the representations, knew they were false when they were made; that they were made with the intention to deceive the plaintiffs, by inducing them to enter into the contract given in evidence, and that plaintiffs were deceived by said false representations, and were thereby induced to enter into said contract, and did enter into said contract, and suffered damage and loss by said contract.

2. If the jury find that the representations complained of in plaintiffs' declaration, were made by the defendant through its authorized agent, and that said representations were inaccurate and incorrect, but that when made, they were based upon estimates furnished them in good faith, and were believed to be accurate and correct, and were not made fraudulently, knowingly, and with intent to deceive, then the plaintiffs are not entitled to recover.

4. That fraud is not to be presumed, and the burden of proof is on the plaintiffs to overcome such legal presumption of good faith, by evidence satisfactory to the jury.

5. If the jury find, that Mr. Patterson was the engineer of the defendant, charged with the duty of locating defendant's road, and making up the estimates offered in evidence, and that after said estimates were made, and exhibited to the plaintiff, John W. Phelps, in New York, just before the plaintiffs made their bid for the contract to construct said road, the said Patterson was asked by the said John W. Phelps, whether his said estimates were correct, or big enough, and that in reply, said Patterson said, I can't say they are absolutely correct, they are large enough, if they err at all, they err on the right side, they show more work than there is; then the jury are instructed, that if they further find that said representations were made in good faith by the said Patterson, and were,

at the time, believed by him to be correct, then the plaintiffs are not entitled to recover, by reason of such representations of the said Patterson, although the jury may believe such estimates were inaccurate and incorrect, and the burden of proof is upon the plaintiffs, to satisfy the jury that Patterson did not make the representations in good faith, but that they were false to his knowledge, or that he had no reasonable ground to believe them to be true at the time.

6. That if the jury find from the evidence, Mr. Patterson was employed as chief engineer by the defendant, to locate the line of its road, and to make an estimate of the quantities and classification of the materials to be moved or handled in the construction of said railroad, and the equipments required for the same, and that while he was engaged in making said location and estimates, John W. Phelps, one of the plaintiffs, visited the locality of the road, and examined the proposed line, and about a month afterwards returned to said locality, where said line of railroad had been located, and procured a profile of the same, and made further examinations of said line, and found that said estimate was not at that time completed, and was informed by said Patterson, and his assistant engineers, that they had made the measurements and calculations for an approximate estimate of said quantities, and classifications of materials and work required for the completion of said railroad, and that they had not taken crosssections on the line of said railroad, but were making said estimate from the centre cutting, with the addition of what they deemed a liberal allowance for the hill-side character of the ground, and that during said last named visit, he discussed with said engineers the approximate quantities of said work, and stated that he thought it amounted to twenty thousand yards to the mile, they stating their belief that it would not exceed fifteen thousand yards to the mile, and that he hurried them up with

said estimate, and stated that he, and his father, the co-plaintiff, had large experience as railroad contractors, and all he wanted was the profile, and that they were going to get the contract for building the road for a lump sum, and that he did not care what their estimate might show the quantities to be, and that afterwards, when said estimate was completed, it was forwarded to New York and exhibited to him, and that prior to his examining said estimate, Willis Phelps, his father, one of the plaintiffs in the cause, had seen and examined the profile at the office of the defendant, in New York, and said to the secretary of the defendant, that the profile was all he wanted to see ; that he had built more railroads than any contractor in the United States, and that he was going to do the work for a lump sum, and could estimate quantities from the profile as well as any engineer ; and that subsequently, upon the 16th of June, 1879, the plaintiffs, after conferences between themselves, made the proposal offered in evidence, and agreed to the modification thereof, appended to the same, and the defendant thereupon awarded the contract for the completion of said railroad to said plaintifis, and that the contract offered in evidence, was executed in pursuance of said amended bid, and acceptance thereof by the defendant; and if they further find, that in the actual execution of the work under the contract, the quantities and classification of material and quantity of work required for the completion of said railroad differed from the estimate, in some respects, considerably exceeding the estimate, and in others, falling under it, and that such differences between the estimated and real quantities were the result of error in the method adopted by the engineers for ascertaining the quantities estimated, or of miscalculation or defective judgment, and not of a wilful and fraudulent intention on the part of said Patterson to deceive or mislead the plaintiffs, then they are not entitled to recover in this action, for any damages which they may

have sustained by reason of the differences between the estimated and actual quantities, even though the jury may further believe that the plaintiffs, in making the bid, and entering into the contract offered in evidence, partly relied upon said estimate for information in respect of the quantity and character of work and materials required, and were partly induced by said estimate to make said bid, and enter into said contract. *

7. That even if the jury believe from the evidence in the cause, that T. L. Patterson, as chief engineer of the defendant, after the plaintiffs made the bid offered in evidence .for the construction and equipment of the defendant's railroad, with the amendment thereto, and after the acceptance of said amended bid by the defendant, but before the contract offered in evidence for the construction and equipment of said railroad was fully drawn up and executed by the plaintiffs and defendant, stated to the plaintiffs, or either of them, that he could not say that the estimate, meaning the preliminary estimate offered in evidence, made by him of the quantities and character of material to be handled, and work to be done in the construction of said railroad was absolutely correct, but that it was large enough, and that if it erred, it erred on the right side ; it showed more work than there was there, and that even if they should further find, that said Patterson was authorized by the defendant to make said estimate, to be exhibited to the plaintiffs, as the basis for them to make their bid for said work, and that in the actual execution of said work, the quantity and character of the material to be handled and work to be done, exceeded, in some respects, what was shown by the estimate, and, in other respects, fell below the estimate ; yet if they also find, or believe, from the evidence, that the said Patterson had reason to believe, and actually did believe honestly and in good faith, that the said statement (if the jury find he made the same), was substantially true, then the plaintiffs

are not entitled to recover for said alleged statement, so made by said Patterson.

9. That the plaintiffs cannot recover in this cause for any extra work which they may have done in constructing the defendants' railroad, beyond what was provided for by the contract offered in evidence, nor for any balance due them (if the jury find there is a balance), under said contract.

10. That if the jury find from the evidence, Mr. Patterson was employed as chief engineer by the defendant, to locate the line of its road, and to make an estimate of the quantities and classification of the materials to be moved or handled in the construction of said railroad, and the equipments required for the same, and that while he was engaged in making said location and estimates, John W. Phelps, one of the plaintiffs, visited the locality of the road, and examined the proposed line, and about a month afterwards returned to said locality, when said line of railroad had been located, and procured a profile of the same and made further examinations of said line, and found that said estimate was not at that time completed, and was informed by said Patterson and his assistant engineers that they had made the measurements and calculations for an approximate estimate of said quantities and classifications of materials and work required for the completion of said railroad, and that they had not taken cross-sections on the line of said railroad, but were making said estimate from the centre-cutting with the addition of what they deemed a liberal allowance for the hill-side character of the ground, and that during said last-named visit he discussed with said engineers the approximate quantities of said work, and stated that he thought it amounted to twenty thousand yards to the mile, they stating their belief that it would not exceed fifteen thousand yards to the mile, and that he hurried them up with said estimate and stated that he and his father, the co-plaintiff, had large experi-

ence as railroad contractors, and all he wanted was the profile, and that they were going to get the contract for building the road for a lump sum, and that he did not care what their estimate might show the quantities to be; and that afterwards, when said estimate was completed, it was forwarded to New York and exhibited to him, and that prior to his examining said estimate, Willis Phelps, his father, one of the plaintiffs in the case, had seen and examined the profile at the office of the defendant in New York, and said to the secretary of the defendant that the profile was all he wanted to see, that he had built more railroads than any contractor in the United States, and that he was going to do the work for a lump sum, and could estimate quantities from the profile as well as any engineer, and that subsequently, upon the 16th of June, 1879, the plaintiffs, after conferences between themselves, made the proposal offered in evidence, and agreed to the modification thereof, appended to the same, and the defendant thereupon awarded the contract for the completion of said railroad to said plaintiffs, and that the contract offered in evidence was executed in pursuance of said amended bid and acceptance thereof by the defendant; and if they further find, that in the actual execution of the work under the contract, the quantities and classification of material and quantity of work required for the completion of said railroad, differed from the estimate, in some respects, considerably exceeding the estimate, and in others, falling under it, and that such differences between the estimated and real quantities was the result of error in the method adopted by the engineers for ascertaining the quantities estimated, or of miscalculation or defective judgment, and not of a wilful and fraudulent intention on the part of said Patterson to deceive or mislead the plaintiffs, then they are not entitled to recover in this action for any damages which they may have sustained by reason of the difference between the estimated and actual quan-

tities, even though the jury may further believe, that the plaintiffs in making the bid and entering into the contract offered in evidence, partly relied upon said estimate for information, in respect of the quantity and character of work and materials required, and were partly induced by said estimate, to make said bid, and enter into said contract.

The Court (ALVEY, C. J., and MOTTER, J.,) rejected the prayers of the plaintiffs, and granted those of the defendant, except the third and eighth, which were rejected, and instructed the jury as follows:

If the jury find from the evidence in this case, that the plaintiffs entered into a contract with the defendant, to build and equip its railroad in Allegany County, for a certain sum, mentioned in the contract, and that prior to the execution of said contract, the defendant had prepared by T. L. Patterson, its chief engineer, an estimate of the quantities of material necessary to be excavated and removed, to construct said road, as well as the various materials to be furnished by the plaintiffs for the construction and equipment thereof, as alleged in the plaintiffs' declaration; and that the defendant, by its president, Loveridge, delivered said estimate to the plaintiffs, for the purpose of enabling them to make the defendant a bid for construction and equipment of said road; and that said Loveridge, as president, and the said Patterson, as chief engineer, or either of them, at, or about the time of the delivery of said estimate, and during the time of the negotiation between the said parties, in regard to the said contract, and before the terms of the same were finally agreed upon and executed, and while acting for the defendant, and in the course of their employment, assured the plaintiffs that said estimate was correct, and that the said plaintiffs believing the said estimate, and the assurance in regard thereto, to be correct and reliable, and in reliance thereupon, did make to the defendant, the within

548 · MARYLAND REPORTS.

Phelps *vs.* George's Creek & Cumb. R. R. Co.

proposal, offered in evidence, to build and equip said railroad, at, and for the lump sum named in said proposal, and that said proposal was accepted by the defendant; and if the jury further find, that the said estimate so furnished, was not correct, but was materially false in respect to the matters, or some of them, complained of in the plaintiffs' declaration, and that such estimate was false and incorrect, to the knowledge of the said Loveridge, or of the said Patterson, at the time of making and delivery of the same, and giving the assurance of its correctness, as aforesaid, or that they had no reasonable ground to believe the same to be substantially correct, and that the said plaintiffs were in fact deceived thereby; and further find, that the plaintiffs, in reliance upon the accuracy of said estimate, entered upon the performance of said contract, and expended large sums of money in and about the construction and equipment of said railroad, over and above what it would reasonably have cost the plaintiffs to perform said work and furnish said materials, if said estimate had been true and correct, then the plaintiffs are entitled to recover in this action, such damages as the jury may find from the evidence, to have directly and naturally resulted from such misrepresentations complained of in the plaintiffs' declaration.

The plaintiffs excepted, and the verdict and judgment being rendered against them, they appealed.

The cause was argued before MILLER, YELLOTT, ROBINSON, IRVING, and RITCHIE, J.

*A. Beall McKaig,* for the appellants.

*Ferdinand Williams,* and *William Walsh,* for the appellee.

RITCHIE, J., delivered the opinion of the Court.

This is an action of deceit brought by the plaintiffs to recover damages because of alleged false and fraudulent

representations and estimates made by the chief engineer and president of defendant concerning the cost of constructing and equipping defendant's railroad, whereby the plaintiffs claim they were induced to contract with defendant to build and equip said road for a sum of money much less than the amount actually required, subjecting them in consequence to great loss.

The verdict and judgment being for defendant, the plaintiffs took this appeal.

During the trial below the plaintiffs took a number of exceptions, eleven in all, to the rulings upon the testimony and the prayers; the first, sixth and eighth of which, however, they abandoned in this Court.

The second exception was taken to the rejection of plaintiffs' offer to prove by the witness, John W. Phelps, one of the plaintiffs, that Patterson, the chief engineer of defendant, who had made the estimates of the cost of the road, had told him at his house, in the fifth month after the work had commenced under the contract, when witness was complaining to him that the quantities would largely overrun the original estimates, that, "if he had shown to these gentlemen in New York, that the road was going to cost $700,000 or $800,000, they never would have gone on with the building of the road." The offer covered by the tenth exception was substantially identical with this, and in our view the same rule of evidence is applicable to them both.

We think the declaration sought to be introduced in both offers, apart from the objection of indefiniteness in the expression, "these gentlemen in New York," and the question of relevancy, was clearly inadmissible; because not made by Patterson in the course of the negotiations which culminated in the contract. It was only during that period Patterson could be regarded as acting as the agent of the defendant company in relation to the contract. The declarations of an agent are admissible only because treated

550 MARYLAND REPORTS.

Phelps *vs.* George's Creek & Cumb. R. R. Co.

as the declarations of his principal, and the latter is bound by them only while the former is acting within the scope of the duties for which he was employed. When these duties are ended, his representative character of necessity ceases. What the agent said or did when acting for his principal is part of the *res gestæ*, and is to be proved afterwards as original evidence, and not by hearsay. 1 *Greenleaf Evid. secs.* 113, 114. "Declarations or admissions by an agent, of his own authority, and not accompanying the making of a contract or the doing of an act in behalf of his principal, nor made at the time he is engaged in the transaction to which they refer, are not binding on his principal, and are not admissible in evidence." *Franklin Bank of Baltimore vs. P., D. & M. Steam Navigation Co.*, 11 *Gill & Johnson,* 34.

The offer of proof giving rise to the third exception was to show that while the plaintiffs were waiting for the defendant to procure a part of the right of way, which they claim was represented by Loveridge, the president of the company, to have been already secured, the price of rails took a sudden rise in the market, so that plaintiffs were obliged to pay more for them, when they concluded to purchase, than they could have gotten them for had the work not been delayed. The contract, however, was not based upon the specific prices at which any of the articles to be furnished by plaintiffs could be bought; no stipulations or restrictions were embraced by it as to how or when they should be procured; and no responsibility as to what they might cost was assumed by the defendant. It was exclusively within the judgment and option of the plaintiffs when to purchase; the risks of a rising or falling market were entirely with them, and the defendant had no concern with the fluctuations in value. Had the price of rails fallen, instead of the reverse, while plaintiffs were holding off from buying, the gain would not have enured to the benefit of the company. In our opinion, the loss

sustained by plaintiffs from the casual rise in the price of steel rails, is, under the circumstances, a damage too uncertain, remote and contingent to constitute a ground of recovery in this action.

The fourth exception was to the ruling of the Court in rejecting the testimony of the witnesses, Dickinson and Smith, taken under a commission, in so far as it related to conversations had by them, respectively, with Loveridge, in which the latter made representations similar to those made by him to plaintiffs concerning the capacity of the chief engineer, Patterson, and the correctness of his estimates. These conversations were held with the witnesses with reference to the making of independent bids for the contract by each of them on their own account. Dickinson and Smith had no connection whatever with the plaintiffs, and it does not appear that what Loveridge stated to them was intended to be, or was, communicated to the plaintiffs, or had any influence in inducing them to enter into the contract they made with defendant. The plaintiffs could recover only upon representations made to or affecting them, and not upon representations addressed to others in no wise identified with them with the purpose of inducing them and not the plaintiffs to bid for the contract.

For these reasons we think the testimony was properly excluded.

The fifth and ninth exceptions may be properly considered together. They relate to allowing the engineer, Patterson, to state that he had made up the estimates in good faith, and with no intention to defraud the plaintiffs, and to allowing Loveridge to state that whatever representations he had made to the plaintiffs were made in good faith and from the best information he had.

It is urged in support of these exceptions that these witnesses were incompetent to testify to the sincerity with which they did the acts and made the statements alleged to be fraudulent, upon the ground that the good faith of

these acts and representations was the subject-matter in issue, and that it was for the jury alone to draw the inference from the nature of these acts and representations and the circumstances surrounding them, whether they originated in good faith or not, without a declaration of their *bona fides* from the parties whose motives were impugned.

The competency of parties, the *bona fides* of whose acts is the matter of inquiry, to testify as to the intent with which those acts were performed, is a point of some nicety, and the decisions are not uniform on the subject. It is manifest that where the law attaches to certain acts the conclusive presumption that they were done in bad faith, the party affected will not be permitted to contravene the legal imputation by his own assertions to the contrary. An illustration of this doctrine may be found in the case of *Ecker vs. McAllister*, 45 *Md.*, 309, which the appellants have cited. That case, however, was not similar to this. There the question was the legal effect of certain acts in contemplation of the bankrupt law, whose provisions attach the legal presumption of bad faith to preferences given to creditors when the debtor is insolvent. But the law affixes no presumption of fraud to representations such as were made by Patterson and Loveridge. So far as these representations in themselves are concerned, they were capable of being made either in good faith or bad faith. They might have been incorrect, and the plaintiffs might have been misled by them to their injury, and yet no right of action for deceit arise. Such a suit could be maintained only in case they had been made from a fraudulent design. Even, therefore, if not really true, the fact still to be ascertained was whether they were wilfully untrue. The ultimate and decisive fact therefore to be reached being the *animus* with which Patterson and Loveridge made their representations, we think they were competent to speak upon that subject. Their declarations, of course, would not be conclusive, but the fact to be ascertained being a

disputable fact related to facts and circumstances on which the law has impressed no fixed inference, and that disputable fact being the actual intent with which Patterson and Loveridge had made their representations, we see no reason why they should not have been permitted to say what that actual intent was.

We think the weight of authority to be, that, where the fact to be established is the intention with which an act has been done, to which act as matter of law no conclusive presumption attaches, as for instance the intention of a party in determining his place of residence, the party whose intention is the subject of inquiry may testify to the nature of his intention as he might to any other material fact. As we have intimated, what credit is to be given the testimony of the witness on this point is for the jury to determine, looking to all the evidence in the cause. 1 *Wharton on Evid.*, sec. 508, and authorities there cited.

The seventh and remaining exception upon the testimony was to the admission of a letter to the plaintiffs from Loveridge dated March 2nd, 1880. We think this letter was properly admitted because in reply to a letter of February 18th previous from one of the plaintiffs, put in evidence by them, setting forth the nature of their complaints at that time. It discloses the position of the company communicated by it to them, as taken in regard to their complaints as then made, and was proper to be considered by the jury also in connection with the fact that for some twelve months thereafter the plaintiffs continued to prosecute the work under their contract and the modifications from time to time made therein.

Whether or not this letter was actually received by plaintiffs was a fact for the jury to find, notwithstanding the plaintiffs denied that they had gotten a reply. It was competent for the jury to infer it from the subsequent conduct and relations of the parties, as well as from the statement of the witness that it had been sent.

In regard to the exception to the ruling of the Court upon the prayers, we think it sufficient to say, that in our opinion the instructions given to the jury by the Court itself fully and correctly set forth the law as applicable to the nature of the action and the evidence in the cause, and that the granted prayers of the defendant were not at variance with the instructions of the Court thus given. As these instructions of the Court amply and even liberally stated the grounds upon which the plaintiffs might recover, no legal injury resulted to the plaintiffs from the rejection of their prayers, which were properly refused for the reason among others that they did not confine the right to recover to the misrepresentations complained of in the declaration, and did not refer to or negative other facts in the case which might qualify the propositions stated in them.

The principles which govern an action such as the present, in which the right of recovery is based upon false representations, have been fully considered and announced by this Court in the cases of *McAleer vs. Horsey*, 35 *Md.*, 439, *Lamm vs. Port Deposit Homestead Association of Cecil County*, 49 *Md.*, 233, and *Buschman & Cook vs. Codd*, 52 *Md.*, 202; and, in the light of these authorities, the plaintiffs certainly have no just cause to complain of the instructions given to the jury by the Court below.

Entertaining these views upon the present appeal, the judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*

(Decided 6th July, 1883.)